PEOPLE v TURNER

PEOPLE v INGRAM

PEOPLE v JOHNSON

PEOPLE v McDONALD

PEOPLE v HALL

Docket Nos. 133436, 133437, 133438, 133563, 133564. Submitted June 6, 1995, at Detroit. Decided September 22, 1995, at 9:25 A.M. Leave to appeal sought.

Willie Turner and Bobby Hall were jointly tried by separate juries in the Recorder's Court for the City of Detroit, Vera Massey Jones, J., and both were convicted of first-degree felony murder and conspiracy to commit armed robbery. Turner was sentenced to concurrent terms of life imprisonment without parole for the murder conviction and forty to eighty years' imprisonment for the conspiracy conviction. Hall was sentenced to concurrent terms of life imprisonment without parole for the murder conviction and thirty-five to seventy years' imprisonment for the conspiracy conviction. Turner appealed (Docket No. 133436) and Hall appealed (Docket No. 133564).

Richard Ingram and Henry Johnson were jointly tried by separate juries in the Recorder's Court for the City of Detroit, Vera Massey Jones, J., and both were convicted of first-degree felony murder and conspiracy to commit armed robbery. Johnson was also convicted of possession of a firearm during the commission of a felony. Ingram was sentenced to concurrent terms of life imprisonment without parole for the murder conviction and fifty to seventy-five years' imprisonment for the conspiracy conviction. Johnson was sentenced to concurrent terms of life imprisonment without parole for the murder conviction and fifty to eighty years' imprisonment for the conspiracy convic-

REFERENCES

Am Jur 2d, Appellate Review § 743; Conspiracy §§ 10, 13, 14; Criminal Law § 167; Homicide §§ 29, 46, 50, 72, 267, 438, 472; Trial §§ 701, 1461, 1464.

See ALR Index under Arguments of Counsel; Aiding and Abetting; Conspiracy; Felony-Murder Doctrine; Homicide; Instructions to Jury.

tion. He was also sentenced to two years' imprisonment for the felony-firearm conviction, to be served consecutively to his other sentences. Ingram appealed (Docket No. 133437) and Johnson appealed (Docket No. 133438).

Ceko McDonald was tried by a jury in the Recorder's Court for the City of Detroit, Vera Massey Jones, J., and was convicted of first-degree felony murder, conspiracy to commit armed robbery, and armed robbery. He was sentenced to concurrent terms of life imprisonment without parole for the murder conviction, thirty to sixty years' imprisonment for the conspiracy conviction, and eight to twenty-four years' imprisonment for the armed robbery conviction. McDonald appealed (Docket No. 133563). The appeals were consolidated.

The Court of Appeals *held:*

1. The evidence was sufficient to sustain Turner's convictions. His failure to object to the jury instructions regarding second-degree murder waives any alleged error unless relief is necessary to avoid manifest injustice. Manifest injustice is not present in this case. The jury instruction regarding felony murder accurately stated the law with respect to malice.

2. The evidence was sufficient to support Ingram's conviction of first-degree felony murder. Error requiring reversal did not occur with regard to the prosecutor's questioning of a witness regarding whether the witness' plea agreement required him to undergo random polygraph examinations. Ingram's failure to object to the jury instructions regarding the standard governing the element of malice in felony-murder cases and aiding and abetting felony murder waives any alleged error unless relief is necessary to avoid manifest injustice. Manifest injustice is not present in this case.

3. The trial court did not abuse its discretion in admitting into evidence a photograph of the homicide victim, which depicted the turned-out pockets of the victim's clothing, to establish the underlying larceny that resulted in the death of the victim. The trial court did not err in denying Johnson's motion for a mistrial after the prosecutor made remarks about a witness' agreement to submit to a polygraph examination in exchange for the witness' guilty plea. The evidence was sufficient to support Johnson's conviction of first-degree felony murder.

4. The evidence was sufficient to support McDonald's convictions. The trial court did not abuse its discretion in admitting into evidence a photograph of the homicide victim taken approximately three days before his death after finding the evidence to be more probative than prejudicial with regard to

the issue of McDonald's intent pertaining to the charge of aiding and abetting the armed robbery of the homicide victim. McDonald's failure to object to a witness' testimony that McDonald had a gun on the way to commit the robberies waives appellate review of any alleged error resulting from the admission of the evidence in the absence of manifest injustice. Manifest injustice is not present in this case. McDonald was not denied a fair trial as a result of the trial court's refusal to inform the jury of McDonald's age when the jury asked for such information during deliberations. The response given by the trial court, which essentially summarized CJI2d 3.1(2), was appropriate. The Court of Appeals declined McDonald's request to review the sentence imposed for McDonald's conspiracy conviction, noting that, even if the Court determined that the sentence was not proportionate, relief could not be afforded given the Court's affirmance of McDonald's conviction of first-degree felony murder and the mandatory sentence of life imprisonment without parole that was properly imposed for that conviction.

5. Hall was not denied a fair trial as a result of the prosecutor's eliciting testimony from a witness regarding the witness' promise to give truthful testimony as a condition of the witness' plea bargain. The questioning did not convey a message to the jury that the prosecutor had some special knowledge or facts indicating the witness' truthfulness. Further, even if the prosecutor's remark was somewhat improper, the court's instruction that arguments of attorneys are not evidence dispelled any prejudice. Evidence that the defendants' gang committed prior similar robberies was offered for the proper purpose of proving Hall's intent and knowledge as a participant in a conspiracy to commit armed robbery and as an aider and abettor in the armed robbery and shooting of the homicide victim. The probative value of the evidence was not substantially outweighed by its potential for unfair prejudice. Hall waived appellate review, in the absence of manifest injustice, by failing to object to the admission of the evidence. Manifest injustice is not present in this case. Hall's claim that the sentence imposed for his conspiracy conviction is not proportionate is moot, given the affirmance of his conviction of first-degree felony murder.

Affirmed.

1. HOMICIDE — FELONY MURDER — MALICE.

The facts and circumstances of a killing may give rise to an inference of malice, but malice can never be established as a matter of law by proof of those facts and circumstances; a jury

properly may infer malice from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm; if the jury concludes that malice existed, it can find murder and, if it determines that the murder occurred in the perpetration or attempted perpetration of one of the felonies enumerated in the statute, the murder is first-degree murder; the issue of malice must always be submitted to the jury (MCL 750.316; MSA 28.548).

2. HOMICIDE — FELONY MURDER — AIDERS AND ABETTORS — INTENT.
   To convict a defendant of aiding and abetting a first-degree felony murder, a prosecutor must show that the defendant had the intent not only to commit the underlying felony, but also to kill or cause great bodily harm or had wantonly and wilfully disregarded the likelihood of the natural tendency of the behavior to cause death or great bodily harm; if the defendant participated in the crime with knowledge of the principal's intent to kill or to cause great bodily harm, the defendant was acting with wanton and wilful disregard sufficient to support a finding of malice; intent is a question of fact to be inferred from the circumstances by the trier of fact (MCL 750.316; MSA 28.548).

3. CONSPIRACY — INTENT.
   A conspiracy is a partnership in criminal purposes; the gist of the offense lies in the unlawful agreement between two or more persons; establishing a conspiracy requires evidence of specific intent to combine with others to accomplish an illegal objective; to prove the intent to combine with others for an illegal purpose, the prosecution must show that the intent, including knowledge, was possessed by more than one person; for intent to exist, the defendant must know of the conspiracy, know of the object of the conspiracy, and intend to participate cooperatively to further that objective (MCL 750.157a; MSA 28.354[1]).

4. CRIMINAL LAW — JURY INSTRUCTIONS — PRESERVING QUESTIONS.
   The failure to object to a jury instruction waives error with regard to that instruction unless relief is necessary to avoid manifest injustice.

5. TRIAL — COERCION OF JURY — APPEAL.
   Claims of coerced jury verdicts are reviewed case by case; all the facts and circumstances, as well as the particular language used by the trial court, must be considered to determine whether the defendant was denied a fair trial.

6. CRIMINAL LAW — WITNESSES — PROMISE TO TESTIFY TRUTHFULLY.
   A prosecutor does not improperly bolster a witness' credibility by

eliciting testimony regarding the witness' promise to give truthful testimony that was a part of the witness' plea agreement where the questioning does not convey a message to the jury that the prosecutor has some special knowledge or facts indicating the witness' truthfulness.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Carolyn M. Breen,* Assistant Prosecuting Attorney, for the people.

*Neil J. Leithauser,* for Willie Turner.

*John B. Payne, Jr.,* for Richard Ingram.

*Douglas Hamel,* for Henry Johnson.

*Shantz & Booker, P.C.* (by *Ted C. Farmer*), for Ceko McDonald.

State Appellate Defender (by *Susan M. Meinberg*), for Bobby Hall.

Before: JANSEN, P.J., and FITZGERALD and R. R. LAMB,* JJ.

PER CURIAM. In these consolidated appeals, defendants were charged and convicted of offenses arising from the November 11, 1989, robbery and shooting death of Rauheem Wells in the City of Detroit. On the night in question, defendants (members of the "Hit Boys Only" gang) met at defendant Ingram's house on the west side of Detroit with the purpose of going to the east side to rob people of their jackets. Defendant Johnson and at least one other man were armed with automatic weapons. While defendants Johnson,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Turner, Hall, and Ingram and Johnson's girl friend, Ravonne Brown, drove in a stolen white Toyota, defendant McDonald walked with Herbert Whitty[1] and Shawn Harris to the parking lot of a nearby senior citizens' complex. After defendant McDonald assisted Harris in the armed robbery of Larry Patton whereby they stole his Plymouth from the parking lot, the group traveled to the east side in the two stolen cars.

In the vicinity of City Airport, Harris robbed a man of his jacket. On returning to the west side, the two cars stopped after the defendants observed Rauheem Wells jogging through a parking lot. Hall, Johnson,[2] and Turner approached the victim and Ingram was a lookout. McDonald and Whitty also approached the scene to assist in the armed robbery. After Hall, Turner, and Johnson hit the victim, Johnson took the victim's goose down jacket and Hall took the victim's shoes. As the others were returning to the cars, Ingram called out to Johnson, "Come on, Lamar, come on." At that point, Johnson stated, "He heard my name, and I got to kill him," and proceeded to fire four shots into the victim. The victim died of multiple gunshot wounds, including two fatal shots to the head. After the shooting, Johnson, Ingram, and Hall returned to the car and told Ravonne Brown that "we shot him." Afterwards, the group returned to Johnson's house where Johnson, Ingram, and McDonald burned the victim's identification card.

The defendants were all charged with first-degree felony murder, MCL 750.316; MSA 28.548, conspiracy to commit armed robbery, MCL

---

[1] Herbert Whitty is a key prosecution witness who pleaded guilty of second-degree murder in exchange for his trial testimony against the defendants in this case.

[2] Johnson had a .32 caliber automatic gun in his hand.

750.157a; MSA 28.354(1), and one count of armed robbery, MCL 750.529; MSA 28.797, arising from the robbery and death of the victim. Defendants Johnson and Ingram were also charged with possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and defendant McDonald was charged with additional counts of armed robbery involving Patton's car and the coat of the unknown male.

Defendants Turner and Hall were tried jointly by separate juries. Both Turner and Hall were convicted of first-degree felony murder,[3] MCL 750.316; MSA 28.548, and conspiracy to commit armed robbery, MCL 750.157a; MSA 28.354(1). Turner was sentenced to concurrent terms of life imprisonment without parole for the murder conviction and forty to eighty years' imprisonment for the conspiracy conviction. Hall was sentenced to concurrent terms of life imprisonment without parole for the murder conviction and thirty-five to seventy years' imprisonment for the conspiracy conviction.

Defendants Ingram and Johnson were tried jointly by separate juries. Both Ingram and Johnson were convicted of first-degree felony murder and conspiracy to commit armed robbery. Defendant Johnson was additionally convicted of felony-firearm, MCL 750.227b; MSA 28.424(2). Ingram was sentenced to concurrent terms of life imprisonment without parole for the murder conviction and fifty to seventy-five years' imprisonment for the conspiracy conviction. Johnson was sentenced to concurrent terms of life imprisonment without parole for the murder conviction and fifty to eighty years' imprisonment for the conspiracy con-

---

[3] The predicate felony was the armed robbery of Wells, MCL 750.529; MSA 28.797.

viction, to be served consecutively to a mandatory two-year term for the felony-firearm conviction.

Defendant McDonald was tried separately before a jury. He was convicted of first-degree felony murder, conspiracy to commit armed robbery, and armed robbery,[4] MCL 750.529; MSA 28.797. McDonald was sentenced to concurrent terms of life imprisonment without parole for the murder conviction, thirty to sixty years' imprisonment for the conspiracy conviction, and eight to twenty-four years' imprisonment for the armed robbery conviction. The defendants all appeal as of right.

DOCKET NO. 133436

I

Defendant Turner first contends that the evidence was insufficient to support his conviction of felony murder. In reviewing the sufficiency of the evidence in a criminal case, this Court must view the evidence in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe,* 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

A

1

MCL 750.316; MSA 28.548 provided at the time of the murder:

Murder . . . which is committed in the perpetration, or attempt to perpetrate . . . robbery . . . is

---

[4] The armed robbery conviction arose from the robbery of the automobile from Larry Patton.

murder in the first degree, and shall be punished by imprisonment for life.

The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316; MSA 28.548. *People v Thew,* 201 Mich App 78, 85; 506 NW2d 547 (1993).

In *People v Flowers,* 191 Mich App 169, 176-179; 477 NW2d 473 (1991), this Court observed:

> Malice is an essential element of any murder, whether the murder occurs in the course of a felony or otherwise. [*People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980).] The element of malice required for statutory felony murder was redefined in *Aaron* to be the same as that required for second-degree murder . . . .
>
> The facts and circumstances of a killing may give rise to an inference of malice, but malice can never be established as a matter of law by proof of those facts and circumstances. It is for the jury to determine whether the element of malice can be inferred from all the evidence. . . . A jury can properly infer malice from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. If the jury concludes that malice existed, it can find murder and, if it determines that the murder occurred in the perpetration or attempted perpetration of one of the enumerated felonies, by statute the murder would become first-degree murder. *Aaron, supra* at 729-730. . . .
>
> \* \* \*
>
> In situations involving the vicarious liability of cofelons, the individual liability of each felon must

be shown. It is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for an unforeseen death that did not result from actions agreed upon by the participants. In cases where the felons are acting intentionally or recklessly in pursuit of a common plan, liability may be established on agency principles. *Aaron, supra* at 731. If the homicide is not within the scope of the main purpose of the conspiracy, those not participating are not criminally liable. 40 Am Jur 2d, Homicide, § 34, p 326.

In order to convict one charged as an aider and abettor of a first-degree felony murder, the prosecutor must show that the person charged had both the intent to commit the underlying felony and the same malice that is required to be shown to convict the principal perpetrator of the murder. Therefore, the prosecutor must show that the aider and abettor had the intent to commit not only the underlying felony, but also to kill or to cause great bodily harm, or had wantonly and wilfully disregarded the likelihood of the natural tendency of this behavior to cause death or great bodily harm. Further, if it can be shown that the aider and abettor participated in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he was acting with wanton and wilful disregard sufficient to support a finding of malice. *People v Kelly,* 423 Mich 261; 378 NW2d 365 (1985).

Intent is a question of fact to be inferred from the circumstances by the trier of fact. . . . It is likewise a factual issue whether a particular act or crime committed was fairly within the intended scope of the common criminal enterprise.

Malice is a permissible inference from the use of a deadly weapon. *People v Martin,* 392 Mich 553, 561; 221 NW2d 336 (1974), overruled in part on other grounds in *People v Woods,* 416 Mich 581; 331 NW2d 707 (1982).

2

MCL 767.39; MSA 28.979 provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense cr procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

One who procures, counsels, aids, or abets in the commission of an offense may be convicted and punished as if he directly committed the offense. MCL 767.39; MSA 28.979; *In re McDaniel,* 186 Mich App 696, 697; 465 NW2d 51 (1991). "Aiding and abetting" describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. *People v Rockwell* 188 Mich App 405, 411-412; 470 NW2d 673 (1991).

A defendant may be charged as a principal but convicted as an aider and abettor. *People v Clark,* 57 Mich App 339, 343-344; 225 NW2d 758 (1975). To support a finding that a defendant aided and abetted a crime, the prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *People v Jones (On Rehearing),* 201 Mich App 449, 451; 506 NW2d 542 (1993). An aider and abettor's state of mind may be inferred from all the facts and circumstances. *People v Hart,* 161 Mich App

630, 635; 411 NW2d 803 (1987), (After Remand) 170 Mich App 111; 427 NW2d 557 (1988); *People v Eggleston,* 149 Mich App 665, 668; 386 NW2d 637 (1986). Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *People v Spearman,* 195 Mich App 434, 441; 491 NW2d 606 (1992), over-ruled on other grounds in *People v Veling,* 443 Mich 23, 43; 504 NW2d 456 (1993).

To sustain an aiding and abetting charge, the guilt of the principal must be shown. *People v DeBolt,* 269 Mich 39, 45; 256 NW 615 (1934); *People v Vaughn,* 186 Mich App 376, 381-382; 465 NW2d 365 (1990). However, the principal need not be convicted. Rather, the prosecutor need only introduce sufficient evidence that the crime was committed and that the defendant committed it or aided and abetted it. *In re McDaniel,* 186 Mich App 696, 699-700; 465 NW2d 51 (1991).

3

The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. MCL 750.529; MSA 28.797; *People v Allen,* 201 Mich App 98, 100; 505 NW2d 869 (1993).

4

The elements of a conspiracy were set forth in *People v Blume,* 443 Mich 476, 481; 505 NW2d 843 (1993), where the Court observed:

A conspiracy is a partnership in criminal pur-

poses. . . . The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons. . . . Establishing a conspiracy requires evidence of specific intent to combine with others to accomplish an illegal objective. [Quotations omitted.]

To prove the intent to combine with others for an unlawful purpose, it must be shown that the intent, including knowledge, was possessed by more than one person. *Id.* at 482. A defendant may become a member of an existing conspiracy if he cooperates knowingly to further the object of the conspiracy, although mere knowledge that someone proposes unlawful action is alone not enough. *Id.* at 483-484. For intent to exist, the defendant must know of the conspiracy, know of the objective of the conspiracy, and intend to participate cooperatively to further that objective. *Id.* at 485.

B

In this case, the evidence was sufficient to sustain defendant Turner's conviction of first-degree felony murder.

1

First, the evidence was sufficient to establish conspiracy to commit armed robbery.[5] Turner's statement to Officer Edwards established that Turner agreed to go with the codefendants to rob people of their jackets. The evidence, both direct and circumstantial, and the reasonable inferences

[5] Although defendant Turner does not claim that there was insufficient evidence for his conviction of conspiracy to commit armed robbery, we consider it as part of a showing that there was sufficient evidence to show that defendant Turner aided and abetted felony murder and that he had the same malice as required to convict the principal (Johnson) of murder.

arising therefrom, indicates that Turner knew that
the plan was to commit armed robberies on the
night in question. According to Whitty, Turner
was a member of the HBO gang, which met regu-
larly at Johnson's residence. Johnson's residence
was a veritable arsenal, storing a .32 caliber auto-
matic, a .38 caliber automatic, a carbine, a .22
caliber rifle, a "pump shot gun," and ammunition.
In addition, Turner rode in the same car as John-
son, who was in possession of a gun. Whitty also
testified that after McDonald and Harris robbed
Patton, Harris gave Johnson the .32 caliber auto-
matic in exchange for the .38 caliber weapon.
Further, in his statement to the police, Turner
stated that he knew that Harris and "someone
else" stole a car from the senior citizens' complex.
Viewing the evidence in a light most favorable to
the prosecution, the evidence was sufficient to
establish that Turner conspired to commit armed
robbery.

2

The evidence was also sufficient to sustain Turn-
er's conviction of armed robbery. The evidence
showed that Turner participated in the assault of
Wells and the felonious taking of his property
while Johnson was armed with a gun. According
to Whitty, Turner and the others got out of the
two cars after spotting the victim. While Ingram
stood on the corner, Johnson, Turner, and Hall
approached the victim. As Turner and Hall were
beating the victim and taking his coat, Johnson
stood by holding a .32 caliber automatic in his
hand. In his statement to the police, Turner admit-
ted that he, Johnson, Ingram, and Hall ap-
proached the victim with the intent to rob him of
his jacket. Viewed in a light most favorable to the

prosecution, the evidence shows that Turner knew that Johnson was armed with a gun. Thus, a jury could find beyond a reasonable doubt that defendant Turner aided and abetted armed robbery.

3

Finally, the evidence was sufficient to sustain Turner's conviction of first-degree felony murder. The evidence shows that Turner, in conjunction with his codefendants, was acting intentionally or recklessly in pursuit of a common plan of armed robbery. The essential question is whether Turner participated in the armed robbery with knowledge of Johnson's intent to kill or cause great bodily harm so as to permit a rational trier of fact to conclude that Turner acted with "wanton and willful disregard" sufficient to support a finding of malice under *Aaron, supra.*

The evidence shows that Turner knew that Johnson had a gun when the group set out with the intent to commit armed robberies. Further, the circumstantial evidence shows that Turner was aware of the fact that Harris was also armed when Harris and McDonald robbed Patton and when Harris and Johnson exchanged weapons. The evidence also shows that Turner knew that Johnson was armed when Johnson stood aside with the gun in his hand while Turner and Hall beat Wells and took his jacket. Turner's knowledge that Johnson was armed during the commission of the armed robbery is enough for a rational trier of fact to find that Turner, as an aider and abettor, participated in the crime with knowledge of Johnson's intent to cause great bodily harm. See *Martin,* 392 Mich 553. Because Turner knew of Johnson's intent to at least cause great bodily harm, a rational trier of fact could find that Turner was acting with

"wanton and willful disregard" sufficient to support a finding of malice under *Aaron.* The evidence, viewed in a light most favorable to the prosecution, was sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that Turner was guilty of aiding and abetting first-degree felony murder.

II

Turner next contends that instructional error deprived him of a fair trial. First, Turner contends that the trial court bolstered the prosecutor's theory of the case by emphasizing the "bodily injury" prong of the instruction for second-degree murder for the benefit of codefendant Hall's jury.[6] Turner failed to object to the instruction. Failure to object to jury instructions waives error unless relief is necessary to avoid manifest injustice. *People v Hendricks,* 446 Mich 435; 521 NW2d 546 (1994). Manifest injustice is not present in this case.

III

Last, Turner contends that the felony-murder instruction did not accurately state the law with respect to malice. We disagree. The instructions in this case are remarkably similar to the instructions given in *People v Kelly,* 423 Mich 261; 378 NW2d 365 (1985), where the Court held that the jury instructions as a whole adequately informed the jury of the *Aaron* standard. After a review of the instructions, we find that the instructions as a whole informed the jury of the *Aaron* standard

---

[6] The trial court informed codefendant Hall's counsel that it would emphasize the "bodily injury" prong of the instruction regarding second-degree murder because Hall's counsel repeatedly omitted "the intent to create a very high risk of death or great bodily harm" in his closing remarks to the jury.

and did not require the jury to determine malice solely on the basis of the intent to commit the underlying felony.

DOCKET NO. 133437

I

Defendant Ingram first contends that the evidence was not sufficient to support his conviction of first-degree felony murder. Again, the dispositive issue is whether Ingram participated in the armed robbery with knowledge of Johnson's intent to kill or to cause great bodily harm so as to permit a rational trier of fact to conclude that Ingram acted with "wanton and willful disregard" sufficient to support a finding of malice under *Aaron.* The evidence shows that Ingram was aware of Johnson's possession of the gun when the group set out with the intent to commit armed robberies. Further, circumstantial evidence shows that Ingram was aware that Harris was also armed when Harris and McDonald robbed Patton and when Harris and Johnson exchanged weapons. The evidence also shows that Ingram was aware that Harris robbed another man of his coat in the area near City Airport before the armed robbery and death of the victim in this case.

According to Whitty's testimony, Ingram and the others got out of the two cars after spotting Wells. While Ingram stood on the corner as a lookout, Johnson, Turner, and Hall surrounded the victim. As Turner and Hall were beating the victim, Johnson stood by holding a .32 caliber automatic in his hand. Johnson took the victim's jacket and Hall took his shoes. Johnson shot the victim because the victim heard Ingram say Johnson's name. Whitty testified that Ingram, standing

at the corner, started jumping up and down, laughing, and saying, "You killed him."

When Ingram, Johnson, and Hall returned to the Toyota, they told Ravonne Brown that "we shot him." After the group returned to Johnson's house with the victim's jacket and shoes, defendant Ingram participated in the burning of the victim's school identification card. According to Whitty, the day after the shooting Ingram pointed to Johnson, saying, "that's the jacket we shot and took from the boy."

Ingram's knowledge that Johnson was armed during the commission of the armed robbery and that Johnson and the others participated in beating Wells is enough for a rational trier of fact to find that Ingram, as an aider and abettor, participated in the crime with knowledge of Johnson's intent to commit great bodily harm. Because Ingram knew of Johnson's intent, a rational trier of fact could find that Ingram was acting with "wanton and willful disregard" sufficient to support a finding of malice under *Aaron.*

## II

Ingram next argues that he was denied a fair trial when the prosecutor bolstered a witness' credibility by inquiring whether a plea agreement required him to undergo random polygraph examinations. We disagree. First, Ingram did not join codefendant Johnson's objection to the remark and, therefore, review is foreclosed unless the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction. *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989).

Applying the factors set forth in *People v Rocha,* 110 Mich App 1, 8-9; 312 NW2d 657 (1981), we find

that error requiring reversal did not occur as a result of the prosecutor's remarks because (1) the reference to the polygraph test was brief, (2) the reference did not indicate whether a polygraph test was actually taken, and (3) the trial court sustained the codefendant's objection and instructed the jury to disregard the witness' answer.

## III

Last, defendant Ingram maintains that the trial court failed to instruct the jury of the *Aaron* standard governing the element of malice in felony-murder cases and failed to properly instruct the jury regarding aiding and abetting felony murder. Because Ingram failed to object to the jury instructions, any error is waived unless relief is necessary to avoid manifest injustice. *Hendricks, supra.* Manifest injustice is not present in this case.

## DOCKET NO. 133438

### I

Defendant Johnson first claims that the trial court abused its discretion in admitting a photograph of Wells into evidence. We disagree. Contrary to Johnson's claim, the photograph was not admitted to show premeditation or deliberation. The photograph, which depicted the turned-out pockets of the victim's clothing, was properly admitted to establish the underlying larceny that resulted in the death of the victim. *People v Hoffman,* 205 Mich App 1, 18; 518 NW2d 817 (1994).

### II

Next, Johnson maintains that the trial court

erred in denying his motion for a mistrial after the prosecutor made remarks about a witness' agreement to submit to a polygraph examination in exchange for his guilty plea. For the reasons stated above with regard to Ingram, we disagree.

### III

Last, Johnson argues that the evidence was not sufficient to support his conviction of first-degree felony murder. We disagree.

First, a rational trier of fact could find that the essential elements of conspiracy to commit armed robbery were proven beyond a reasonable doubt.

Here, Whitty testified that when Johnson came to get him at Ingram's house, Johnson said that he was going to rob someone. Whitty and Johnson then went downstairs to meet the others in front of Ingram's house. Johnson then went with the others in the Toyota, which followed Whitty, McDonald, and Harris to the senior citizens' complex, where McDonald and Harris robbed Patton of his car at gunpoint. After Johnson and Harris exchanged guns, the two cars proceeded to the east side with the purpose of robbing people of their jackets

A rational trier of fact could also find that the elements of armed robbery were proven beyond a reasonable doubt. Whitty testified that Johnson was armed with a .32 caliber automatic gun when he assaulted the victim and took his jacket. *Allen,* 201 Mich App 100.

Finally, a rational trier of fact could find that Johnson had the intent to kill, intent to do great bodily harm, or the wanton and wilful disregard of the likelihood that the natural tendency of his action was to cause death or great bodily harm

when he killed the victim in the course of committing armed robbery.[7]

Whitty testified that when Ingram said Johnson's name, Johnson fired four shots into the victim. Whitty also testified that he observed Johnson standing over the victim's body with a .32 caliber automatic gun in his hand. When Johnson returned to the Toyota, he and the others told Ravonne Brown that "we shot him."

In conclusion, the evidence was sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that Johnson was guilty of felony murder.

### DOCKET NO. 133563

#### I

Defendant McDonald first claims that the evidence was not sufficient to support his convictions. We disagree. First, the evidence was sufficient to establish conspiracy to commit armed robbery. *Blume, supra* at 481-485. Whitty testified that he and McDonald often went to Johnson's house and observed various weapons and ammunition. On November 19, 1989, McDonald was at Ingram's house where he met the other codefendants before they set out to rob someone. McDonald, Whitty, and Harris walked to the area of the senior citizens' complex, followed by the others in the white Toyota. McDonald then accompanied Harris into the parking lot where they robbed Patton of his car. After this armed robbery, Harris had a .32 caliber automatic gun that he gave to Johnson in exchange for a .38 caliber gun. According to Whitty, the purpose of stealing the second car was

---

[7] The felony-murder rule is not necessary to establish Johnson's mens rea regarding the felony murder because the circumstances directly show his intention to kill. *Aaron, supra* at 730.

to enable all eight individuals to go to the east side to carry out the planned robberies. According to Ravonne Brown, McDonald and Harris had guns when the group stopped at a house en route to the east side. The group eventually stopped in the area of City Airport, where Harris robbed a man of his coat and later robbed Wells of his coat and shoes.

There was also sufficient evidence to sustain McDonald's convictions of two counts of armed robbery.

First, the evidence was sufficient to establish that McDonald aided and abetted Harris in the armed robbery of Patton. In that incident, the evidence, when viewed in a light most favorable to the prosecution, shows that McDonald acted as a lookout while Harris robbed Patton of his car at gunpoint. Harris then drove away with McDonald in the passenger seat.

In addition, McDonald also aided and abetted in the armed robbery of Wells. According to Whitty, the two cars stopped when the victim was seen jogging through a parking lot. McDonald, Harris, and Whitty got out of the stolen Plymouth, while Johnson, Hall, Turner, and Ingram got out of the Toyota. While Johnson, Turner, and Hall surrounded the victim and took his coat and shoes, Whitty and McDonald approached the scene with the purpose of participating in the robbery so as to prevent the victim from escaping. After the others completed the robbery, McDonald and Whitty began to walk back to the car. At that point, Johnson had the victim's coat wrapped around his .32 caliber automatic and was pointing it at the victim, who was on his knees with his arms up and elbows out. Johnson fired four shots into the victim after he heard Ingram say his name. Subsequently, after the group returned to Johnson's

house, McDonald told Whitty that the victim's identification card had been burned.

Further, in his statement to the police, McDonald admitted that he participated in the armed robbery of Wells. Upon getting out of the car, he approached the scene with Whitty and saw Johnson, Ingram, and Hall take the victim's coat and shoes, and then beat the victim. According to McDonald, Johnson hit the victim in the face with his pistol while they were beating the victim. McDonald also stated that when he and Whitty were returning to their car, he saw Johnson aim and fire four shots at the victim. McDonald also acknowledged in his statement to the police that the victim's identification card was in his pocket.

This evidence, when viewed in a light most favorable to the prosecution, established that McDonald knew that Johnson was armed with a gun when the group robbed Wells. Thus, the evidence was sufficient to show that McDonald aided and abetted the armed robbery by approaching the scene to prevent the victim's escape, while the others took the victim's coat and shoes.

The evidence was also sufficient to permit a rational trier of fact to find beyond a reasonable doubt that McDonald was guilty of aiding and abetting first-degree felony murder. As we have previously noted, the essential question is whether McDonald participated in the armed robbery with knowledge of Johnson's intent to kill or to cause great bodily harm so as to permit a rational trier of fact to conclude that McDonald acted with "wanton and willful disregard" sufficient to support a finding of malice under Aaron. Kelly, supra.

Here, the evidence shows that McDonald was aware that Johnson possessed a gun when the group set out with the intent of committing armed robberies. McDonald admitted in his statement

the police that he knew that Harris was armed and that Harris took out his gun and pointed it at Patton's head when Harris took the car. In addition, Ravonne Brown testified that McDonald was armed when the group stopped at the first house en route to the east side. The evidence also shows that McDonald knew that Johnson possessed a gun when Johnson, Ingram, and Hall were beating Wells and taking his coat.

This evidence is sufficient to permit a rational trier of fact to find that McDonald participated in the armed robbery with knowledge of Johnson's intent to cause Wells at least great bodily harm. Because McDonald knew of Johnson's intent to cause great bodily harm, a rational trier of fact could find that McDonald, as an aider and abettor, was acting with "wanton and willful disregard" sufficient to support a finding of malice under *Aaron.* Hence, the evidence was sufficient to support McDonald's conviction of first-degree felony murder.

II

Next, McDonald argues that the trial court abused its discretion in admitting into evidence a photograph of the victim taken approximately three days before his death. In admitting the photograph over defense objection, the trial court stated:

> Well, it goes to intent. And I will tell you how it goes to intent. If these young people decide that they were going to take on the responsibility of robbing a young man of this particular build, it could, in fact, be argued that they knew that they were going to have to do at least great bodily harm to him to get him to give up his coat and his shoes.

This young man is built. So, I don't know how
anyone [sic] individual in their right mind without
a gun would walk up to him and decide to take his
coat off of him. Nobody would do that. And they
have to show in this case that the defendant either
intended to kill or intended to do great bodily
harm or create those circumstances.

. And I will give it completely when I do give it to
the jury. And if you engage on [sic] an enterprise
and here you are looking at this young man, he's
running down the street.

And as a matter of fact, I guess he was wearing
a jogging suit, and/or he had that jacket on, which
would show his build. And here you decide to rob
him and you get out of the car and go to offer
assistance to those who are robbing him?

. At that time you embark on that enterprise, you
got to know either you are going to use at least a
gun or you are going to have to show force. And
here you are, you are part of the force that's going
to make him give up his position [sic].

So, it's not that they have to prove that he could
have gotten away. What they are trying to prove
is the intent with which the person acted when
they went up to this young man.

So, I'm going to have to let it in. Because it is
more probative than prejudicial.


Contrary to McDonald's claim, the photograph
in question was relevant to a disputed element of
the crime and was not calculated to inflame the
jury. The trial court did not abuse its discretion in
allowing the photograph into evidence as more
probative than prejudicial with regard to the issue
of McDonald's intent pertaining to the charge of
aiding and abetting the armed robbery of Wells.

III

McDonald also contends that the trial court
erred in admitting Brown's testimony that McDon-

ald had a gun when he stopped at a house on the way to commit the robberies. McDonald did not object to Brown's testimony, thereby waiving appellate review of the admission of the evidence in the absence of manifest injustice. *People v Yarger,* 193 Mich App 532, 539; 485 NW2d 119 (1992). Manifest injustice is not present in this case. Defense counsel vigorously cross-examined the witness and impeached the witness by eliciting the admission that she did not tell the police in her December 1989 statement that McDonald had a gun. *Id.*

IV

Next, McDonald maintains that the trial court coerced the jury's verdict by refusing to answer the jury's question about McDonald's age. Claims of coerced verdicts are reviewed case by case, and all the facts and circumstances, as well as the particular language used by the trial court, must be considered to determine whether the defendant was denied a fair trial. *People v Malone,* 180 Mich App 347, 352; 447 NW2d 157 (1989).

In the midst of deliberations, in response to a question from the jury, the trial court instructed the jury as follows:

Ladies and gentlemen, a few minutes ago you sent out a note that says, how old is Ceko McDonald. It was not announced. It most certainly was not announced.

And when I get a note like that, I get very concerned. I get concerned because this case is not supposed to be based on sympathy or bias. I want to remind you that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law.

You must not let sympathy or prejudice influ-

ence your decision. You've heard all of the evidence. It came from the witness stand. There were physical exbhiits [sic] that were admitted into evidence.

And there were stipulations that were entered in order for you to make your determination as to the facts based on the evidence and the law as I gave it to you.

Sympathy or prejudice or bias must not influence your decision. We will rise for you to resume your deliberations.

The trial court's response to the jury's question was an appropriate response that essentially summarized CJI2d 3.1(2). There is no indication in the record that McDonald was denied a fair trial by the trial court's refusal to inform the jury of his age.

V

Last, McDonald claims that the sentence imposed for the conspiracy conviction was neither individualized nor proportionate. We decline to address the sentence imposed for that conviction. Given our affirmance of McDonald's conviction of first-degree felony murder, and the mandatory term of natural life imposed for that conviction, even if we concluded that the sentence was disproportionate, no relief would be afforded. *People v Passeno,* 195 Mich App 91, 102; 489 NW2d 152 (1992).

### DOCKET NO. 133564

Defendant Hall first argues that he was denied a fair trial because the prosecutor improperly bolstered Whitty's credibility by eliciting testimony regarding his promise to give truthful testimony

as a term of his plea bargain. We disagree. As in *People v Bahoda,* 448 Mich 261, 276-277; 531 NW2d 659 (1995), the questioning did not convey a message to the jury that the prosecutor had some special knowledge or facts indicating the witness' truthfulness. Further, even if the prosecutor's remark was somewhat improper, "the judge's instruction that arguments of attorneys are not evidence dispelled any prejudice." *Id.* at 281.

Hall next contends that Whitty was improperly permitted to testify that he and Hall belonged to a gang whose purpose was to steal jackets and sell drugs. By failing to timely object to the admission of the evidence, Hall waived appellate review in the absence of manifest injustice. *Yarger, supra.* Manifest injustice is not present in this case. Evidence that the Hit Boys Only gang committed prior similar robberies was offered for the proper purpose of proving Hall's intent and knowledge as a participant in a conspiracy to commit armed robbery, and as an aider and abettor in the armed robbery and shooting of Wells, and its probative value was not substantially outweighed by its potential for unfair prejudice.

Finally, given our affirmance of Hall's conviction of first-degree felony murder, his claim that the sentence imposed for the conspiracy conviction is disproportionate is moot. *Passeno, supra* at 102.

Affirmed.