# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMETRIUS AL HUDSON,

        Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No. 319569
Wayne Circuit Court
LC No. 13-007211-FC

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of armed robbery, MCL 750.529, two counts of assault with intent to do great bodily harm less than murder, MCL 750.84, and felony-firearm, MCL 750.227b. We affirm.

A woman was using a drive-thru automated teller machine (ATM) at 11:30 a.m., with two small children in her vehicle, when she was targeted by defendant and a juvenile. She first noticed the juvenile walking toward their vehicle. He was wearing a black hoodie and his hand was in the front pocket, but it was a hot sunny day. After she made eye contact with him, the juvenile stopped and looked back toward some bushes. She looked too, and saw defendant standing there. Her view was unobstructed. Defendant nodded at the juvenile, and the juvenile quickened his approach toward her vehicle. As she began to pull away from the ATM, the juvenile pulled out a gun and fired a shot toward her vehicle. As she was driving to a nearby police station, she saw defendant and the juvenile run out of an alley in front of her vehicle. She then saw them run into a house on Eastwood Street. Subsequently, she was able to flag down a police officer. As she was driven past the house on Eastwood by a police officer, she saw defendant and the juvenile, as well as a third person, coming out of that house. The police officer testified that the victim immediately identified defendant and the juvenile as the perpetrators. Defendant and the juvenile were arrested. A black hoodie and several weapons were found in the Eastwood house.

On appeal, defendant argues that the evidence was insufficient to establish that he was the person standing by the bushes near the ATM and that he aided and abetted the juvenile in the commission of the crimes. We disagree.

"This Court reviews de novo a challenge to the sufficiency of the evidence in a bench trial." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). Considering

-1-

the evidence in a light most favorable to the prosecution, we determine whether the trial court could have found the essential elements of each crime were proven beyond a reasonable doubt. *Id*. at 474.

Identity is an essential element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "The credibility of identification testimony is a question for the trier of fact that [this Court] do[es] not resolve anew. Moreover, this Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) (internal citation omitted).

Defendant argues that "the evidence failed to show that [he] was at the scene." Apparently, defendant is arguing that the victim's testimony was not credible and her identification of him should not have been accepted by the trial court. But this Court may not interfere with the trier of fact's role of determining the credibility of identification testimony. See *id*. In any case, defendant is wrong. The victim testified that she had a clear view of defendant when she was at the ATM, particularly when she looked through her open window directly at him. She saw defendant again when he ran out of an alley in front of her vehicle. Then she saw defendant run into the house on Eastwood. When she was riding past that house with a police officer, she immediately identified defendant. She also identified defendant in photographs the police took after they went to investigate the house on Eastwood. And the victim unequivocally testified at trial that defendant was the person she saw standing by the bushes. This evidence, viewed in a light most favorable to the prosecution, was sufficient to establish that defendant was the person standing near the bushes by the ATM.

Defendant also argues that the evidence was insufficient to establish he acted as an aider and abettor to the juvenile. We disagree. To prove an aiding and abetting theory, the prosecution had to show the following:

> "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time [the defendant] gave aid and encouragement." [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (citations omitted).]

"An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), quoting *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995), overruled in part on other grounds *People v Mass*, 464 Mich 615 (2001). These can include "a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Turner*, 213 Mich App at 569.

Defendant appears to argue that the "nod" given to the juvenile did not rise to aiding and abetting the commission of the charged crimes. Under the circumstances of this case, we cannot agree. The victim testified that the juvenile was walking toward her vehicle with his hand in the front pocket of his black hoodie. He was wearing a hoodie although it "was scorching hot" and sunny. When she made eye contact with him, the juvenile stopped. He only proceeded toward

the victim's vehicle after he looked at defendant, who was standing near the bushes, and defendant nodded his head at the juvenile. The victim testified that defendant "nodded his head okay. Like yes." Then, she testified, the juvenile "proceeded to come towards us a little faster than he was." As the victim began to pull away from the ATM, the juvenile fired a gunshot at her vehicle. Defendant and the juvenile then fled the scene together and ran to a house on Eastwood.

The evidence, considered in the light most favorable to the prosecution, shows that defendant partnered up with this juvenile who, because of his age, would not appear threatening. They had a plan to rob someone who was using the ATM. The juvenile would use a concealed gun and defendant would act as a lookout for him. But, when the victim saw the juvenile and looked him in the eyes, the juvenile stopped—apparently reconsidering. The juvenile looked to defendant who was standing nearby. Defendant directed or encouraged the juvenile to continue with their plan to rob the victim at gunpoint. Inspired, the juvenile returned his focus to the victim at the ATM, and began walking faster toward her vehicle. When the victim fled, in a show of bravado for defendant's benefit, the juvenile fired at her vehicle. He then ran away with defendant. They were eventually found together at the Eastwood house, with the black hoodie and several guns, and were arrested. The record evidence supported defendant's convictions under an aiding and abetting theory.

Next, defendant argues that he was denied due process because the prosecution suppressed material evidence consisting of a videotape showing the victim at the ATM. We disagree.

A determination regarding whether a party was afforded due process is a question of law reviewed de novo. *People v Odom*, 276 Mich App 407, 421; 740 NW2d 557 (2007). This Court reviews for an abuse of discretion a trial court's decision whether to grant a motion for a new trial. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

Under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the prosecutor must turn over all evidence within its possession that is favorable to the accused and material to guilt or punishment. In *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014), our Supreme Court identified the essential components of a *Brady* violation as follows:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. [*Chenault*, 495 Mich at 149-150, quoting *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999).]

"Stated differently, the components of a 'true *Brady* violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150. To establish the materiality prong, a defendant must show prejudice, i.e., a reasonable probability exists that, if the evidence had been disclosed to the defense, the result of the trial would have been different. *Id*. (citation omitted).

The videotape at issue here was not available prior to the start of trial. The prosecutor explained that he attempted to obtain the videotape from the bank, but the bank indicated that it was destroyed and unavailable. The trial proceeded. After the verdict was rendered, the prosecutor informed the trial court that the bank recovered the videotape and it would be provided to the court and to defense counsel. At sentencing, the trial court noted that the videotape was provided and, after watching it, the court concluded that it contained nothing beneficial to defendant. In fact, the videotape bolstered the victim's testimony. Specifically, the trial court stated:

> It only showed the victim putting her card in the machine and then leaving quickly. So we can't use it to show that the defendant was either, either participated or did not participate in the crime because [ ] of the nature of the allegations here. That shot wouldn't have exonerated him or, or proven him guilty.
>
> But what's important is that it shows the victim kind of turning around and looking to her back which is circumstantial evidence that there was indeed another offender standing in the bushes participating in or guiding the commission of the crime. And, and then that sort of goes hand-in-hand with the other evidence that they left together. And then they went into the same house together after the crime was committed and then were observed coming out of the house at the same time.
>
> So the - - this video that the defendant and his family are so excited about is of no consequence. It doesn't help him at all. It doesn't help him at all.
>
> And, and there certainly was no fault attributable to [the prosecutor] for why that video didn't come into, to evidence during the trial because it wasn't available at that moment. But then when it did become available, it became apparent that it wasn't helpful anyway. So it's a nonargument.

Defendant's *Brady* claim fails. The prosecution did not suppress the videotape, either willfully or inadvertently; it was provided as soon as it became available. The videotape was not favorable to defendant; it was neither exculpatory nor impeaching. And the videotape was not material to defendant's guilt or punishment; therefore, he was not prejudiced. Consequently, defendant was not denied due process because of a *Brady* violation. It follows that defendant's ineffective assistance of counsel claim premised on his counsel's failure to acquire the videotape before trial is also without merit. See *Chenault*, 495 Mich at 159.

Finally, defendant argues that the trial court improperly scored offense variables (OV) 9 and 14. We disagree.

Because defendant objected to the scoring of OV 14 at sentencing, this issue is preserved. See MCL 769.34(10). The interpretation and application of the sentencing guidelines is reviewed de novo. *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Factual determinations must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). However,

-4-

defendant agreed at sentencing that the scoring of OV 9 at 10 points was accurate because there were three individuals in the targeted vehicle; thus, this issue was waived and any such error extinguished. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). In any case, neither challenge has merit.

Under OV 14, a trial court must assess 10 points when the defendant "was a leader in a multiple offender situation." MCL 777.44(1)(a). Defendant argues that no evidence suggested that he was the leader; rather, it showed that the juvenile was the leader. We disagree. As the trial court noted, the evidence showed that the juvenile looked to defendant for direction or encouragement after he stopped walking toward the victim and, when it was given, the juvenile moved forward with their plan. The trial court did not clearly err in scoring OV 14 at 10 points. See *Hardy*, 494 Mich at 438.

Under OV 9, 10 points must be assessed if there were "2 to 9 victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). At sentencing, it was agreed by the prosecutor, defense counsel, and the trial court that the evidence established there were three victims in the vehicle that the juvenile fired a gunshot at—the woman, her son, and her nephew. Further, in rendering its guilty verdict, the court clearly referred to these three victims and noted that defendant could have been charged with three counts of assault with intent to do great bodily harm. Thus, defendant's challenge to the scoring of OV 9 is without merit. In summary, defendant is not entitled to resentencing.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad