# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEVONTA MALIK LOVE,

        Defendant-Appellant

UNPUBLISHED
August 28, 2018

No. 334746
Wayne Circuit Court
LC No. 15-007627-02-FJ

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYJUAN DAMARIOUS-ROBERT MOORE,

        Defendant-Appellant

No. 334958
Wayne Circuit Court
LC No. 15-007627-01-FC

Before: CAVANAGH, P.J., and STEPHENS and SWARTZLE, JJ.

PER CURIAM.

Defendants appeal as of right their bench trial convictions of second degree murder, MCL 750.317 and felony firearm, MCL 750.227b. Defendant Love was sentenced to 6-15 years for the murder charge and the mandatory two years for the felony firearm charge. Defendant Moore was sentenced to 9-15 years for the murder charge and the mandatory 2 years for the felony firearm charge. In both docket numbers 33476 and 334958, we affirm.

## I. BACKGROUND

Defendants' convictions arise from the shooting death of Frederick Ricks in the city of Detroit between 4:43 and 5:00 a.m. on August 16, 2015. The victim was shot while riding in a van being driven by Courtney Morrison as they approached the intersection of Westfield and Stout. Upon crossing the intersection Morrison heard gunshots and the back window of the van shattered. She did not see who fired the shots or any other cars on the road so she continued down Westfield making first a right turn onto Burt Road, and then a left through the alley. The

-1-

victim initially told her he was okay but later said that he had been shot in the leg. He then told Morrison to take him home, which was a few blocks away at 9378 Trinity instead of to the hospital. Morrison complied and the victim ultimately bled to death in the van due to the gunshot wound to his calf that went through two arteries. There was a path of blood from the van, down the driveway, northbound onto Trinity to west of Burt Road showing where the victim had started to bleed out on Burt Road. The police had followed this blood trail to the home on Trinity.

The police theorized that the shots that killed Mr. Ricks were fired by someone at the home of James Bosley located at 9312 Stout Street sometime between 4:43 and 5:00 a.m. The Stout address was between three and six blocks away from the victim's home depending on the route taken. Around 4:43 a.m. the police received an anonymous call that shots had been fired from the area of Westfield and Stout Streets. Upon arriving at the 9312 Stout address, they recovered guns hidden in the drop ceiling of the basement and one under a mattress upon which Bosley and his fiancée, Deanna Bridges had been sleeping. The police also located a bullet riddled minivan across the street in front of the house at 9303 Stout. Bosley and Bridges were taken into custody for interrogation and later released. Bosley subsequently testified at trial.

At trial, Bosley testified that earlier on the evening of August 15th, he and some of his acquaintances and family members filmed a rap video at his house. In the video young men, including both defendants, took turns passing guns around. On that same day there was also a fund-raising event held at the house to raise money to pay for the funeral expenses of Bosley's cousin who had recently been killed in a car accident. Bosley's brother was the driver in the fatal accident. Bosley indicated that due to the circumstances surrounding his cousin's death someone had recently shot at the house on Stout Street a few days prior to the video shoot. After the video shoot ended Bosley and his fiancée went down in the basement and went to sleep. He testified that he had taken three or four sleeping pills prior to going to sleep. He was awakened sometime later by the defendants coming downstairs. According to Bosley, defendant Love was in possession of a revolver when he came downstairs and made the statement "I let a couple go." Defendant Moore was in possession of an AK assault rifle type of weapon that he referred to as a "Chopper" and made the statement "I banged that ni**er." Both defendants then went to the other side of the basement and Bosley went back to sleep. He stated that he was awakened later that morning by someone telling him to wake up because the house was surrounded by police. He and his fiancée went outside and were taken into custody. Bosley claimed that it was not until he arrived at the police department that he found out that somebody at his house was accused of shooting at a van resulting in a death. Bridges asserted her Fifth Amendment Right not to testify at trial and the trial court admitted her preliminary examination testimony. The court, also allowed the parties to use her statement pursuant to the investigatory subpoena to impeach that exam testimony which they did.

Officer Erik Peterson testified that when he arrived at the Trinity address around 5:15 a.m. he discovered bullet holes on the front passenger side of the Town and Country van in which the victim had been found. He also indicated that he did not find any weapons inside the van but that he had located a blood trail from Trinity to west of Burt Road.

Forensic evidence was also presented. Forensic technician, William Creer, testified that he found three projectile impacts and one strike mark on the passenger-side door of the victim's

vehicle at the Trinity address. At the Stout address, Creer testified that he found three 9mm Aguilar shell casings and a 38 Winchester shell casing near the porch, a copper shell casing in the street, and a box of live 38 mm auto PMC cartridges. He also found one 9mm Star SA gun under the mattress in the basement and a 9mm, a 38 caliber, and a long gun with black electrical tape inside the drop ceiling in the basement. Forensic scientist, Brian Grabowski, testified that he examined the seized firearms and the recovered casings and the tests were inconclusive as to whether the guns recovered fired into the van.

At the close of the prosecutor's proofs and after the denial of both defendants' motions for directed verdict the defense rested. The parties asked the court to consider lesser offenses which it agreed to do. On June 29, 2016 the trial court returned a guilty verdict for both defendants and defendant Love was sentenced on July 29, 2016. Defendant Moore filed a motion for new trial based upon an affidavit from Bosley recanting his testimony stating that it was not accurate because the police pressured him into testifying. The trial court denied the motion and defendant Moore was sentenced on August 24, 2016. Both defendants now appeal as of right.

## II. INSUFFICIENT EVIDENCE

In docket number 33476, defendant Love seeks reversal of his conviction on the grounds that there was insufficient evidence upon which to convict him of second degree murder and felony firearm under an aiding and abetting theory because the prosecution failed to both provide sufficient evidence that the victim was killed by anyone at the 9312 Stout address or that he aided and abetted in that crime. In docket number 334958, defendant Moore seeks reversal of his conviction on the ground that the trial court based its finding that defendant aided and abetted in second degree murder on circumstantial evidence. We reject both arguments.

This Court reviews a claim of insufficient evidence de novo, in the light most favorable to the prosecution; the test being whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 amended on other grounds 441 Mich 1201 (1992).

Contrary to defendants' arguments, sufficient evidence was presented to convict both defendants of second degree murder and felony firearm under an aiding and abetting theory. Second degree murder requires proof that: (1) a death occurred, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death. *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "To support a finding that a defendant aided and abetted a crime, the prosecutor must show that: (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v Turner,* 213 Mich App 558, 568-569; 540 NW2d 728 (1995). "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *Id*.

First, there was sufficient evidence for a trier of fact to conclude that the shots fired at the victim were fired from the house at 9312 Stout at a time when both defendant Love and

defendant Moore were present at the home. The physical evidence supported a finding that shots were fired within the Stout household and that those shots were from the weapons possessed by the two defendants at a time contemporaneous to the fatal shots. While there was no direct evidence as to which weapon caused the death, the trier of fact could reasonably infer that one of the guns fired from within the house caused that death and both defendants participated for whatever reason in releasing the barrage of fire which resulted in the death.

There was competent testimony presented from Bosley that upon entering the basement, defendant Love was in possession of a revolver and made an admission that "I let a couple go" shortly after shots were heard. Testimony was also presented from Bosley that defendant Moore also came into the basement immediately after shots were heard in possession of an assault rifle he referred to as a "Chopper " and made an admission that he "banged that ni**er." This was buttressed by the video played for the court, shot earlier in the evening on the 15th showing both defendants in possession of a revolver and an assault rifle respectively. The assault rifle defendant Moore was holding in the video had the clips taped together. The police later recovered three guns, one being a revolver and one being described as an AK-47 type rifle with the clips taped together, hidden in the drop ceiling of the basement. There was also testimony from Morrison placing the van in proximity to Bosley's Stout address at the time of the weapons being fired. Specifically Morrison testified that she heard shots and then the back of her window breaking as she was approaching the intersection of Westfield and Stout. The court found this testimony to be credible.

Additionally, there was significant physical evidence presented to the court. The court, noted the fact that the victim was shot near Westfield and Stout and started to bleed out on Burt Road as evidenced by the blood trail from Burt leading to the house on Trinity. There were two spent thirty-eight caliber casings found just north of the porch on Stout. A box of thirty-eight caliber ammunition that could be fired from a revolver was also found on the front porch of the house suggesting that a revolver was involved in the shooting. Defendant Moore's gun was later identified as a Zastava MP 92. One of the clips of the Zastava MP 92 was empty, and a clip holds 25 bullets. Twenty three shell casings were recovered from the front porch of the house on Stout and one shell casing was recovered from a Chevy Uplander parked across the street.

When viewed in the light most favorable to the prosecution, there was sufficient evidence to support that all of the essential elements of the crime were proven beyond a reasonable doubt.

### III. DOCKET NO. 334958

In docket number 334958, defendant Moore argues that the verdict was against the great weight of the evidence because Bosley's testimony was not credible due to his consumption of sleeping pills on the night of the shooting. Additionally, he argues that he is entitled to a new trial or at least an evidentiary hearing based on Bosley's recantation of his testimony. We disagree.

### A. GREAT WEIGHT OF THE EVIDENCE

In a bench trial, to determine if the verdict was against the great weight of the evidence, we first review the court's findings of fact for clear error. See *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 651; 662 NW2d 424 (2003). A finding is clearly erroneous if the reviewing

court is left with a definite and firm conviction that a mistake was made. *People v Allen*, 295 Mich App 277, 281; 813 NW2d 806 (2011). The determination of whether a verdict is against the great weight of evidence requires review of the whole body of proofs. *People v Herbert,* 444 Mich 466, 475; 511 NW2d 654 (1993), overruled on other grounds by *People v Lemmon,* 456 Mich 625 (1998). A verdict is against the great weight of evidence if "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). If the evidence conflicts, the issue of credibility ordinarily should be left for the trier of fact. *Lemmon*, 456 Mich at 642-643.

Defendant's argument requires us to find that Bosley's testimony was unbelievable. We acknowledge that Bosley's testimony had inconsistencies. We also agree that Bosley's ability to accurately recount the events was impaired by his consumption of sleeping aides. However, "conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial" absent exceptional circumstances, as where the testimony contradicts indisputable physical facts or laws, the testimony is patently incredible or defies physical realities, the testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, or the testimony has been seriously impeached and the case is marked by uncertainties and discrepancies. *Id.* at 643-644, 647.

As noted above, the trial court found Bosley's statements pertaining to what defendant Moore said in the basement to be credible. The court found that his testimony was supported by the physical evidence found at the scene, such as the bullet holes in the minivan parked across the street and the shell casings found outside the house. The trial court was entitled to make the determination that Bosley's testimony was credible. Credibility of a witness is a matter for the trier of fact to ascertain. *Id.* at 642-643. This Court will not resolve it anew.

## B. MOTION FOR A NEW TRIAL

This Court reviews the denial of a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). Similarly, the decision "to grant a new trial on the basis of recanting testimony is a decision committed to trial court discretion." *People v Canter*, 197 Mich App 550, 560; 496 NW2d 336 (1992). "In reviewing the trial court's decision, due regard must be given to the trial court's superior opportunity to appraise the credibility of the recanting witness and other trial witnesses." *Id.*

Traditionally, this Court has been reluctant to grant new trials on the basis of newly discovered evidence. *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). "Where newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *Canter, supra* at 559. The trial court declined to grant defendant's motion for new trial making a credibility determination that the complainant's subsequent recanting affidavit was unbelievable due to the circumstances of the recantation and it not being newly discovered evidence. There was record evidence that the defendant contacted Bosley after the trial through a three way call and told him that he knew the police pressured him to testify. A few days later, defendant's mother and father appeared at Bosley's house unannounced and told

him to come with them in their car. They then drove him to a different location and had him sign an affidavit recanting his trial testimony. Once Bosley returned home he called the police officer in charge and stated that he was "forced to do that," referring to signing the recantation. When the police officer asked if he was in fear for his safety Bosley stated "Yeah, because I've been receiving threats, and she just popped up at my house."

Accordingly it was not an abuse of discretion for the trial court to make the determination that the complainant's trial testimony was more credible than his statements contained in the recanting affidavit. This Court must defer to the trial court's superior ability to assess the credibility of the witnesses testifying before it. *Canter, supra* at 560.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Brock A. Swartzle