David TUCKER, Petitioner–Appellee,

v.

John PRELESNIK, Respondent–Appellant.

No. 98–1343.

United States Court of Appeals, Sixth Circuit.

Argued March 9, 1999.

Decided June 10, 1999.

David A. Moran (argued and briefed), State Appellate Defender Office, Detroit, MI, for Petitioner–Appellee.

Janet A. Van Cleve (argued and briefed), Office of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent–Appellant.

Before: SILER and GILMAN, Circuit Judges; BECKWITH, District Judge.[*]

BECKWITH, D. J., delivered the opinion of the court, in which GILMAN, J., joined. SILER, J. (pp. 757–58), delivered a separate dissenting opinion.

## OPINION

SANDRA S. BECKWITH, District Judge.

In 1992, Petitioner–Appellee David Tucker was convicted of assault with intent to do great bodily harm after a state court bench trial lasting less than one hour. The trial judge sentenced him outside the zero to 24–month range prescribed by the applicable sentencing guidelines, to a term of six to ten years of imprisonment. Petitioner–Appellee Tucker has now served his sentence and is on parole.

Mr. Tucker appealed his conviction and sentence as of right and argued that he had received ineffective assistance of counsel. The state appellate court remanded the case to the trial judge for a hearing, known as a *Ginther* hearing in Michigan, on Mr. Tucker's claim of ineffective assistance. The trial judge denied Mr. Tucker's claim. The Michigan Court of Appeals affirmed Mr. Tucker's conviction and sentence in a brief unpublished opinion, and the Supreme Court of Michigan, by an evenly divided vote, denied Mr. Tucker's application for leave to appeal. *See People v. Tucker,* 450 Mich. 889 (1996).

On July 8, 1996, Mr. Tucker filed a petition for writ of habeas corpus in the district court. On August 29, 1997, that court issued the writ. The district court held that Mr. Tucker had been deprived of the effective assistance of counsel at trial by virtue of his trial counsel's failure to obtain the medical records of the complainant, who was the only witness at trial. The district court concluded that Mr. Tucker was prejudiced by his trial counsel's failure in that regard, inasmuch as the complainant's medical records cast serious doubts upon his trial testimony and the quality of his memory. The district court finally concluded that the state courts had unreasonably applied the Supreme Court's standard for relief under the Sixth Amendment based upon the ineffective assistance of counsel. The district court denied Respondent–Appellant's motion for reconsideration on February 6, 1998, and this appeal followed.

## I. BACKGROUND

In June 1990, both Petitioner–Appellee Tucker and Anthony Henderson were em-

[*] The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

ployees of a McDonald's restaurant in Detroit, Michigan. On June 30, Mr. Henderson was attacked and severely beaten in or near the men's restroom of the restaurant. Mr. Henderson suffered a closed-head injury and was rendered unconscious. Petitioner–Appellee Tucker reported Mr. Henderson's injury to the restaurant manager on duty, who instructed Mr. Tucker to call 911.

The victim of the assault, Anthony Henderson, remained comatose in a Detroit hospital for an extended period of time after the assault. The medical records of his hospitalization indicate that he was comatose for a period of one month, that he was speaking coherently two to four months after the assault, and that he did not have any broken ribs.

The Detroit Police initially brought charges against two individuals other than Petitioner–Appellee for the assault on Anthony Henderson. Not until April 1991, ten months after the assault, did Anthony Henderson indicate to the Detroit Police that he believed that Mr. Tucker was involved in the assault. For reasons that are not entirely clear from the record, the prosecutor eventually decided to pursue charges against Petitioner–Appellee Tucker only.

A few weeks prior to trial, Mr. Tucker's trial counsel received a letter from Anthony Henderson's workmen's compensation attorney. The attorney stated that Mr. Henderson was "unable to testify with specificity as to the identity of the individuals who assaulted and severely beat him." Appendix, p. 65. The attorney further "advised that Mr. Henderson is not in any way agreeing not to testify against David Tucker." *Id.* Mr. Tucker's attorney nevertheless took the letter as indicating that Anthony Henderson would not testify at Mr. Tucker's trial. He did nothing to prepare for the trial.

When the trial began, and Mr. Tucker's counsel learned that Anthony Henderson would testify, counsel did not request a continuance. Anthony Henderson was, in fact, the prosecution's only witness. He testified that Mr. Tucker pushed him into the restroom where Robert Wiley and an unknown man assaulted him. Mr. Henderson also testified that he had been comatose for a period of six months after the assault, that he had been unable to speak to the police for a period of nine months, and that all of his ribs had been broken in the attack.

Mr. Tucker also testified. He denied any involvement in the assault on Anthony Henderson. His counsel represented to the trial judge that Mr. Henderson's medical records would show that he had no memory of the assault. Counsel did not have the records, however, and could not introduce them. The trial judge convicted Petitioner–Appellee Tucker of assault with intent to do great bodily injury.

At the sentencing hearing, Anthony Henderson made a victim impact statement in which he stated that he had been comatose for a six-month period after the assault and that he had been unable to speak for an additional three-month period. He stated that his assailants had broken all of his ribs. The trial judge deviated from the applicable sentencing guideline and imposed a term of six to ten years of imprisonment.

On remand from the Michigan Court of Appeals for consideration of Mr. Tucker's claim of ineffective assistance of counsel, the trial court heard testimony from the investigating police officer that Anthony Henderson had initially identified Robert Wiley as the man who pushed him into the restroom. The trial judge stated that evidence of Mr. Henderson's initial statements was not relevant.

Mr. Tucker also presented the testimony of his trial counsel, Robert Nelson, concerning the letter he received from Mr. Henderson's workmen's compensation attorney shortly before trial. The trial judge indicated that he believed that the contents of the letter regarding Mr. Henderson's state of mind were hearsay

and of no evidentiary value. Mr. Nelson testified that he had not been aware that Mr. Henderson had initially identified Robert Wiley, rather than Mr. Tucker, because he had trusted the prosecution to provide him with relevant documents and he had not requested police investigation reports. After Mr. Nelson testified that he did not attempt to impeach Mr. Henderson with his statement to his workmen's compensation attorney because he believed the statement to be hearsay, the trial judge terminated the *Ginther* hearing. The judge denied Petitioner–Appellee Tucker's motion for a new trial and stated that the *Ginther* hearing had been an "academic irrelevancy."

Several weeks after the *Ginther* hearing, Mr. Tucker's appellate counsel received Mr. Henderson's medical records. Counsel moved to reopen the *Ginther* hearing on the ground that the medical records demonstrated that Mr. Henderson had testified falsely at Mr. Tucker's trial.

At a January 8, 1993 hearing, appellate counsel made an offer of proof of the medical records. The trial court permitted counsel to read portions of the records into the record and to argue concerning their import. The trial judge then engaged in the following dialog with appellate counsel:

THE COURT: I saw the trial. I heard the witnesses. I believed the complainant. Those records that you brought in here today prove absolutely nothing at all. Nothing. Absolutely nothing. I saw the terrible injuries that this man sustained.

Now I know there was no robbery. I knew that the only reason this fight started was that there was an argument over getting off or changing a shift or something, and that this man was hit over the head; he was put in the hospital. He cannot walk. He's having trouble walking.

MR. MORAN: There's no dispute about that, Your Honor.

THE COURT: I don't care how long he was in a coma, it doesn't make any difference.

MR. MORAN: Your Honor, don't you think that impacts his memory?

THE COURT: Let the Court of Appeals handle that. The man is guilty. You can bring all the records in you want, that hasn't changed one thing, except all it's done to me is make me even more convinced than I was before. How in the world could there be a difference? We know a person in a coma for one month, how would you like to be in a coma for two days? He was in a coma for 40, 30 days.

On appeal, the Michigan Court of Appeals, citing Michigan case law based upon *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), concluded that Mr. Tucker had failed to show that, but for the claimed error, he would have had a reasonable chance of acquittal. That court also concluded that Mr. Tucker had failed to show prejudice of any kind resulting from his trial counsel's lack of preparation. On those bases, the Michigan Court of Appeals affirmed the trial court's denial of the motion for a new trial. By a divided vote, the Michigan Supreme Court denied Mr. Tucker's motion for leave to appeal.

On July 8, 1996, Mr. Tucker filed a petition for writ of habeas corpus in the district court. Mr. Tucker asserted a claim of ineffective assistance of counsel in violation of the Sixth Amendment. He asserted, specifically, that he was deprived of the effective assistance of counsel by virtue of his attorney's failure to prepare for trial or seek a continuance when he learned that Anthony Henderson would testify; failure to obtain Mr. Henderson's medical records and to use those records to impeach Mr. Henderson at trial; failure to obtain police reports indicating that Mr. Henderson had initially implicated Robert Wiley, rather than Mr. Tucker, as the

person who pushed him into the restroom; failure to use the letter from Mr. Henderson's workmen's compensation attorney to impeach Mr. Henderson; and other asserted failures.

The district court granted the petition. Applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court concluded that Petitioner–Appellee Tucker was deprived of the effective assistance of counsel by virtue of his trial counsel's failure to obtain Anthony Henderson's medical records before trial. Interpreting 28 U.S.C. § 2254(d) in the manner outlined by the United States Court of Appeals for the Fifth Circuit in *Drinkard v. Johnson*, 97 F.3d 751, 767–68 (1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), the district court concluded that a "reasonable trier of fact—jury or judge—could find differently than" the state court trial judge. Memorandum Opinion and Order, p. 18. Respondent–Appellant appeals from the district court's Opinion and Order.

## II. THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), applies in this case inasmuch as Petitioner–Appellee Tucker filed his petition for writ of habeas corpus after the AEDPA's effective date of April 24, 1996. *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). Pursuant to the amendments to 28 U.S.C. § 2254(d) effectuated by the AEDPA, a writ of habeas corpus may not be granted unless the state court proceedings

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Several other circuits have interpreted § 2254(d) in light of the amendments to that statute resulting from the enactment of the AEDPA. In a very recent decision, this Court discussed the interpretations of the various circuit courts in articulating a standard to be applied to cases arising in this circuit. *See Nevers v. Killinger*, 169 F.3d 352 (6th Cir.1999).

The *Nevers* court first made note of the two disjunctive phrases, "was contrary to" and "involved an unreasonable application of", in § 2254(d)(1). The court discussed the approaches of the various circuit courts that have addressed the "was contrary to" portion of the statute. Under any approach, the *Nevers* court concluded, the claim before it was not a claim that the state court's decision was contrary to clearly established Federal law. Accordingly, the court did not decide which of the varying interpretations of the first phrase in § 2254(d)(1) it preferred. *See Nevers*, 169 F.3d at 361.

■ Likewise, we conclude that Petitioner–Appellee Tucker's ineffective assistance of counsel claim does not arise under the "was contrary to" phrase of § 2254(d)(1). Mr. Tucker does not assert that the facts before the state trial court at his *Ginther* hearing were "essentially the same as those the Supreme Court has faced earlier" and that the state court reached a result different than that reached by the Supreme Court. Neither does he assert that the state courts failed to apply the correct legal standards. *See Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 811, 142 L.Ed.2d 671 (1999). Similarly, this case does not involve "a decision of pure law or the application of law to facts indistinguishable in any material way from those on the basis of which the prece-

dent was decided...." *Green v. French,* 143 F.3d 865, 870 (4th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999). *See also Nevers,* 169 F.3d at 361. Accordingly, our analysis is limited to the "unreasonable application" phrase in 28 U.S.C. § 2254(d)(1).

As the *Nevers* court noted, the lack of agreement among the circuits with regard to the meaning and application of the term "unreasonable application" is sharp. *See Nevers,* 169 F.3d at 361. "[A]ll the cases appear to agree that 'the "unreasonable application" clause does not empower a habeas court to grant the writ merely because it disagrees with the state court's decision, or because, left to its own devices, it would have reached a different result.'" *Id.* (quoting *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir.1998)). The *Nevers* court noted that the various circuit courts that have considered the meaning of the "unreasonable application" phrase do not agree upon what a district court must find in order to issue the writ. *See Nevers,* 169 F.3d at 361.

■ After reviewing decisions from the various circuits, the *Nevers* court settled on the standard enunciated by the First Circuit in *O'Brien.* Pursuant to that standard, a district court may issue the writ under the "unreasonable application" phrase of 28 U.S.C. § 2254(d)(1) if it concludes that the state court decision was "'so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.'" *Nevers,* 169 F.3d at 361 (quoting *O'Brien,* 145 F.3d at 25). The *Nevers* court observed, however, that, in *Herbert v. Billy,* 160 F.3d 1131 (6th Cir.1998), another panel of this court expressed its agreement with the "reasonable jurist" approach taken by the Fifth Circuit in *Drinkard v. Johnson,* 97 F.3d 751, 767–68 (1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).

The *Nevers* court harmonized the two approaches, even though it recognized that the First Circuit had specifically rejected *Drinkard*'s "reasonable jurist" approach in *O'Brien,* 145 F.3d at 25 n. 7. Crediting both the First and Fifth Circuits, the *Nevers* court stated that

[t]he deference to the state courts' judgments required by the AEDPA is achieved by adopting the rule that the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be "debatable among reasonable jurists," *Drinkard,* 97 F.3d at 769, if it is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," *O'Brien,* 145 F.3d at 25.

*Nevers,* 169 F.3d at 362. In this circuit, therefore, the writ will issue if the unreasonableness of the state court's application of clearly established precedent is not debatable among reasonable jurists. The unreasonableness of the application will not be debatable if it is so offensive to the precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes. We will apply that standard to determine whether the district court below erred in granting the writ to Petitioner–Appellee Tucker.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ The district court granted the writ on Petitioner–Appellee's claim of ineffective assistance of counsel. Specifically, the district court concluded that Petitioner was deprived of the assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution by virtue of his trial counsel's failure to obtain Anthony Henderson's medical records and to use those records to impeach Mr. Henderson at trial. We review *de novo* the legal conclusions underlying the district court's decision to grant the writ under § 2254, and we review its findings of fact for clear

error. *See DeLisle v. Rivers*, 161 F.3d 370, 380 (6th Cir.1998).

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court considered for the first time a claim of actual ineffectiveness of counsel's assistance. The Court noted that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Id.* at 684, 104 S.Ct. 2052. The Supreme Court had previously recognized that the Sixth Amendment guarantees "the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Prior to its decision in *Strickland*, however, the Court had not elaborated on the meaning of the effective assistance requirement. *See Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

In *Strickland*, the Supreme Court established that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* The Court enunciated two components of a claim that counsel's assistance was sufficiently defective to require reversal of a conviction:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. 2052.

■ The *Strickland* Court confirmed that "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* In order to prove ineffectiveness, therefore, a defendant must dem-onstrate that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052. Accordingly, a court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *See id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

■ Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *See id.* at 691, 104 S.Ct. 2052. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Id.* at 691–92, 104 S.Ct. 2052. Accordingly, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance." *Id.* at 692, 104 S.Ct. 2052. The *Strickland* court enunciated the following more precise test for prejudice:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. 2052.

At the *Ginther* hearing in the Michigan trial court, Mr. Tucker's appellate counsel offered medical records that reflected upon Anthony Henderson's ability to remember the assault and suggested that effective counsel would have introduced the records, and perhaps expert testimony concerning the records, to impeach Mr. Henderson. The trial judge responded as follows:

> I don't care how many experts you bring in to say this man couldn't remember anything, he was in here in that chair testifying in court and naming names and pointing at people. I don't really think that this really amounts to ineffective assistance of counsel. What it really amounts to is if I were the lawyer, this is what I would have done. And it's much easier to do that after the affair is over than at the time.

> * * *

> Now, what would impress the jury and what would have impressed the court; since I think this was a waiver trial? Wouldn't have been the testimony of an expert, but the testimony of the witness who was there. So, I'm not going to grant that and I don't think that rises to the level of *Ginther*, only rises to the level of this is what I would have done.

The court engaged in the following colloquy with Mr. Tucker's appellate counsel concerning the same topic:

> THE COURT: But this man, this man's testimony was quite—it was quite clear about what he said happened and he didn't—he seemed to me to know what he was talking about.

> MR. MORAN: Your Honor, the suggestion we made is that if you had heard all of the prior wildly different things he had said and then had an expert explain to you why people don't remember things after they have been in a coma for six months.

> THE COURT: Yes, but that's impeachment. I did not hear that. If he told somebody else that outside of the court and that's being brought up now, how would I know about it? I can only determine the case by what I hear in the courtroom. But I don't know what he might have said to someone. I assume all of the witnesses were here.

While the trial judge did not make specific reference to *Strickland*, he referred to both of the components of a claim of ineffective assistance of counsel enunciated by the Supreme Court. First, he implied a conclusion that Mr. Tucker's trial counsel's performance was not deficient when viewed from the perspective of counsel at the time, rather than in hindsight. Then, he suggested that any error by Mr. Tucker's trial counsel did not affect the outcome of trial inasmuch as the trial court was only concerned with what the victim said on the stand. While the trial court's articulation of the constitutional standard was less than clear, we are not persuaded that the court applied the incorrect legal standard.

Likewise, the Michigan Court of Appeals, in consideration of Mr. Tucker's appeal from the trial court's decision, explicitly applied the standard enunciated in *Strickland*. That court, after articulating the standard, stated simply that Mr. Tucker had "failed to show prejudice of any kind resulting from counsel's alleged lack of preparation." The issue before the district court, and before us on appeal, is whether the trial court made an unreasonable application of the *Strickland* standard.

Having reviewed the performance of trial counsel in Mr. Tucker's case, we are persuaded that the unreasonableness of the state courts' application of *Strickland* is not debatable among reasonable jurists. While the district court granted the writ specifically with regard to Mr. Tucker's

claim based upon counsel's failure to obtain and use medical records at trial, we consider that deficiency in conjunction with counsel's failure to request a continuance when he learned that Anthony Henderson would testify at trial and his failure to obtain and use evidence of earlier, contradictory statements by Mr. Henderson concerning the assault. Petitioner–Appellee Tucker raised each of those failures by his trial counsel as a ground for relief before the district court.

■ Counsel, unprepared and assuming that the prosecution would present no evidence against his client, nevertheless declined to request a continuance to prepare. His failure to do so, when he knew that he was unprepared for trial and had not obtained critical evidence of which he was aware, could not be considered representation within the "wide range of reasonable professional assistance." *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Indeed, Petitioner–Appellee Tucker's "burden of overcoming the presumption that the challenged action might be considered sound trial strategy" is not a difficult one in this case. No conceivable sound trial strategy would include a decision to proceed unprepared when counsel has learned that his assumption that the prosecution would not present evidence was unfounded.

The same is true of Mr. Tucker's trial counsel's failure to obtain Anthony Henderson's medical records prior to trial and to use the records to impeach Mr. Henderson. To the extent that Mr. Henderson's medical records could be used to demonstrate that his memory concerning the assault was faulty, particularly when considered together with evidence of his varying versions of the assault, counsel's failure to obtain those records could not have been part of a sound trial strategy. Rather, as Mr. Tucker's trial counsel conceded at the *Ginther* hearing, he had no trial strategy. He believed, until the trial began, that the prosecution would not present evidence. Accordingly, he perceived no reason to prepare a strategy for

trial. We conclude that his failure to request a continuance, combined with his failure to obtain medical records casting serious doubt on the reliability of the testimony of the prosecution's sole witness and his failure to obtain and use earlier, contradictory statements of the witness concerning the attack, was an error so serious as to have deprived Mr. Tucker of a fair trial as guaranteed by the Sixth Amendment.

The state trial judge, having been informed of Mr. Tucker's trial counsel's failure to obtain and introduce favorable evidence and to request a continuance, nevertheless concluded that counsel's performance was within the range of reasonable professional assistance. As we have stated, such a conclusion is not only unreasonable, but its unreasonableness is not debatable among reasonable jurists. The trial judge suggested that the evidence of Anthony Henderson's changing versions of the assault and the effect of his injuries on his memory was irrelevant because it was not presented at trial. He recognized that he could only decide the case on the basis of the evidence that was before him, yet he failed to attach any significance to trial counsel's failure to adduce contrary evidence.

■ The trial court also concluded that Petitioner–Appellee Tucker had not been prejudiced by any deficiency in his trial counsel's representation. His basis for that conclusion, apparently, was that he was so influenced by the extent of Anthony Henderson's injuries and by his statement on the stand concerning Mr. Tucker's involvement in the assault, that he would not have considered any evidence that would have tended to impeach Mr. Henderson.

Applying the "reasonable jurist" standard, we conclude that reasonable jurists could not debate the unreasonableness of the state trial judge's application of the *Strickland* prejudice standard. We have previously set forth our conclusion that Petitioner–Appellee Tucker satisfied the

first component of the *Strickland* standard before the state trial court. We reach the same conclusion concerning the second, prejudice, component of that standard.

The evidence of Anthony Henderson's inability to recall reliably the incidents surrounding his assault is substantial. Any reasonable finder of fact would necessarily have been influenced by the evidence of Mr. Henderson's lack of credibility based upon his defective memory. Applying the standard of proof necessary to return a conviction, a reasonable finder of fact would likely not have convicted Mr. Tucker of assault with intent to do great bodily harm had all of the relevant evidence been presented at trial. Accordingly, we conclude that had counsel requested a continuance and obtained and presented evidence tending to show that Anthony Henderson's memory concerning the assault was faulty, there is a reasonable probability that the outcome in Petitioner–Appellee's criminal case would have been different. Petitioner–Appellee, therefore, has demonstrated prejudice in satisfaction of the second component of the *Strickland* test for ineffective assistance of counsel.

The state trial court's reliance upon the extent of Anthony Henderson's injuries and his testimony at trial to conclude that the introduction of impeachment evidence would not have affected the outcome of the trial is indefensible. In a case like Mr. Tucker's, in which the only evidence linking the defendant to the crime is the victim's testimony, evidence that the victim's memory of the crime has changed and has been affected by injuries would necessarily satisfy *Strickland*'s "reasonable probability" standard. The extent of the victim's injuries and the fact that he testified at trial are not evidence of his credibility. While the finder of fact was able to make assessments concerning the witness' credibility, those assessments were made in the vacuum created by counsel's failure to obtain and present evidence bearing upon credibility, counsel's knowledge of the existence of such evidence notwithstanding.

The trial court's suggestion that the evidence offered by Mr. Tucker's appellate counsel at the *Ginther* hearing was an "academic irrelevancy" convinces us that he made an unreasonable application of the *Strickland* standard.

We further conclude that the state trial court's conclusion that impeachment evidence would have been of little value given the extent of the witness' injuries and the witness' testimony at trial is so arbitrary as to be outside the universe of plausible, credible outcomes. The trial judge did not hear the evidence of Anthony Henderson's memory difficulties and state reasons for rejecting that evidence. Rather, he stated, in essence, that he would not consider the evidence because he had seen the badly injured witness testify at trial. Such an application of the *Strickland* standard is both offensive to the standard set forth by the Supreme Court and arbitrary. The Michigan Court of Appeals' decision, in which that court ignored the serious deficiencies in trial counsel's performance and overlooked the obvious resulting prejudice, is equally offensive to the *Strickland* precedent. The Court concludes, therefore, that the district court did not err in granting Petitioner–Appellee Tucker's petition for the writ of habeas corpus.

## IV. CONCLUSION

We, therefore, **AFFIRM** the grant of the writ.

SILER, Circuit Judge, dissenting.

I respectfully dissent, for I believe that the decision by the Michigan Court of Appeals in *Michigan v. Tucker*, No. 153967 (Mich.Ct.App. Sept. 13, 1994), was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), under the standard set out in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). My reasons for this conclusion are set out herein.

First, the majority goes beyond the determination of the district court in this case in finding that trial counsel was ineffective. The district court found that trial counsel was ineffective for failing to obtain and present Henderson's medical records as impeachment before the court. This may include the failure of defense counsel to request a continuance in order to obtain the records, but the district court did not state that as a ground for granting the writ. More specifically, however, the district court found that the failure of defense counsel to use the letter (that Henderson could not identify Tucker) from Henderson's civil attorney, the failure to obtain and use information showing that Henderson had initially implicated Wiley, and the failure to use Henderson's inconsistent testimony at two preliminary hearings, did not amount to a deficient representation and, therefore, were not ineffective assistance of counsel. These findings were not appealed to this court. The only decision by the district court in granting the writ had to do with the failure to obtain and present Henderson's medical records which contradicted Henderson's testimony as to the length of time that he was in a coma and whether he had any broken ribs. Therefore, I confine my analysis to whether this conclusion by the district court below comported with the criteria of 28 U.S.C. § 2254(d).

The majority correctly analyses the law when it says that we are bound by the decisions in *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.1999); and *Herbert v. Billy*, 160 F.3d 1131 (6th Cir.1998). Thus, the conclusion from *Nevers*, as well as from the majority here, is that "the unreasonableness of [the Michigan Court of Appeals'] application of clearly established Supreme Court precedent will not be 'debatable among reasonable jurists,' if it is so 'offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.'" *Nevers*, 169 F.3d at 362 (internal citations omitted).

I cannot find that this failure to present the medical records of the prosecuting witness was so prejudicial to the case that the determination by the Michigan Court of Appeals that it was not prejudicial is devoid of record support, or so arbitrary as to indicate it is outside the universe of plausible, credible outcomes.

When counsel on appeal first raised the question of ineffective assistance of counsel, as the majority indicates, the case was remanded to the original trial judge for a *Ginther* hearing to determine ineffective assistance of counsel. This case differs substantially from the usual type of case involving ineffective assistance of counsel, because the trier of fact was the judge who presided at the *Ginther* hearing. Although on remand the trial judge never did look at the medical records involved, he still stated that if trial counsel erred, it did not affect the outcome of the trial, because his decision would have been the same. The test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Ordinarily, when a court makes this determination, there is no way to present the question back to the original fact finder, which likely would be a jury. Instead, this case presents an anomaly: the judge who tried the case said that it would not affect his decision. Tucker could not show to the Michigan Court of Appeals that, but for the claimed error, he would have had a reasonable chance for acquittal. If I were a state appellate judge, it is possible that I might have reached a different conclusion. However, that does not mean that the conclusion reached by the Michigan Court of Appeals was unreasonable. It was not devoid of record support, for the finder of fact said that it would not have affected his decision. It was also not arbitrary. Therefore, I would reverse the granting of the writ by the district court in this case.