**Jabbar Priest BULLS, Petitioner,**

v.

**Kurt JONES, Respondent.**

**No. 99–CV–73698–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 22, 2000.

Krut C. Kobelt, Madison, WI.

Wayne Rudell, Dearborn, MI.

Timothy K. Darroll, Detroit, MI.

## OPINION AND ORDER CONDITIONALLY GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

TARNOW, District Judge.

Petitioner Jabbar Priest Bulls, a state prisoner·confined at the Carson City Correctional Facility in Carson City, Michigan and represented by the State Appellate Defender·Office ("SADO"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-degree felony murder, assault with intent to rob while armed, and felony firearm following a jury trial in the Genesee County Circuit Court in 1997. He was sentenced to life imprisonment without parole on the murder conviction, 25–50 years imprisonment on the assault with intent to rob conviction, and two years imprisonment on the weapon conviction.

In his petition, Petitioner claims that the trial court violated his Confrontation Clause rights by admitting the un-redacted statements of a non-testifying co-defendant as evidence against him at trial. Petitioner also claims. that the Michigan Court of Appeals' conclusion that such error was harmless is contrary to federal law and/or constitutes an unreasonable application of that law. For the reasons stated below, the petition for a writ of habeas corpus is CONDITIONALLY GRANTED.[1]

### I. Relevant Facts

Petitioner's convictions stem from the shooting death of Jermaine Johnson during an armed robbery at his home in Flint, Michigan on August 24, 1995. Petitioner was tried with the co-defendant Terance

1. Staff Attorney Cheryl Takacs Bell provided quality research assistance in the preparation of this opinion and order.

Hill, the alleged look-out for the robbery. Deonte Matthews, the alleged shooter and third participant in the robbery, was not brought to trial.

The testimony presented at trial revealed that Mr. Johnson's neighbors overheard the robbery and shooting occur, saw two men flee the scene, and contacted police. When police arrived, they found Mr. Johnson dead in his home from a shotgun wound to his head. Based upon the neighbors' description of one of the fleeing men, police picked up Terance Hill who was walking a few blocks from Mr. Johnson's home. Mr. Hill denied knowledge of the robbery, did not exhibit evidence of involvement in the robbery, and was released from custody.

One year later, Mekia Randle, Petitioner's ex-girlfriend, informed police that Petitioner had told her about his participation in the robbery of Mr. Johnson. Ms. Randle described aspects of the incident that had not been revealed to the public. Based upon her report, Petitioner was arrested and brought in for questioning. While in police custody, Petitioner made statements to the investigating officers implicating himself, Terance Hill, and Deonte Matthews in the robbery. Police subsequently arrested Mr. Hill and Mr. Matthews. While in custody, Mr. Hill made several statements to police implicating Petitioner and Mr. Matthews in the robbery. He downplayed his own role in the incident.[2]

During trial, over defense objection, the trial court admitted the un-redacted statements of both Petitioner and Mr. Hill into evidence even though neither defendant testified. Police Sergeant Rick Warren recounted his interviews with Petitioner and Mr. Hill and read their formal statements into evidence at trial.

According to Sergeant Warren, Petitioner initially denied being involved in the robbery, but admitted his participation when confronted with a partial tape re-cording of Ms. Randle's police interview. In his formal statement, Petitioner explained that Mr. Johnson approached him on the street and sexually propositioned him. Petitioner accompanied Mr. Johnson to his home, but made an excuse to leave before engaging in any sexual acts, indicating that he would return at a later time. Petitioner then walked to Mr. Matthews' house and proposed the robbery to Mr. Matthews and Mr. Hill. Petitioner admitted that he asked Mr. Matthews if he had a gun and Mr. Matthews retrieved a shotgun from his house to use during the robbery. Petitioner, Mr. Matthews, and Mr. Hill walked to Mr. Johnson's house. When Mr. Johnson answered the door, Petitioner and Matthews pushed their way into the house while Mr. Hill remained outside as a look-out.

Once inside the house, Mr. Matthews held the gun on Mr. Johnson while Petitioner began searching the house. While Petitioner was preparing to search an upstairs bedroom, Mr. Matthews attempted to search another room. Petitioner then heard footsteps running down the stairs followed by a gunshot. Petitioner went to the top of the stairs and saw Mr. Johnson lying at the bottom of the stairs with a head injury. Petitioner asked Mr. Matthews why he had fired the shotgun. Mr. Matthews replied that Mr. Johnson had tried to run. Petitioner then ran down the stairs, left the house, and fled to Mekia Randle's house. Petitioner told Ms. Randle what had occurred the next morning. In a subsequent statement to police, Petitioner also admitted that Mr. Matthews had taken a watch from Mr. Johnson's home, but threw it in some bushes after they fled the scene. Sergeant Warren acknowledged that Petitioner never expressed an intent to shoot or kill Mr. Johnson.

Sergeant Warren also interviewed Mr. Hill following his arrest. Mr. Hill initially

---

2. It does not appear from the record that Mr. Matthews made any statements to police. In fact, Petitioner asserts that Mr. Matthews was not brought to trial because the only evidence against him were Petitioner's and Mr. Hill's statements.

denied knowing about the robbery, but admitted being involved when confronted with information obtained from the other interviews. In his statements to police, Mr. Hill indicated that Petitioner proposed the robbery to him and that the initial plan was for Petitioner to gain access to Mr. Johnson's house, to beat and tie up Mr. Johnson, and then let Mr. Hill into the house to help him carry out clothing, jewelry, electronic equipment, and other valuables. Petitioner and Mr. Hill encountered Mr. Matthews while walking to Mr. Johnson's house. Petitioner and Mr. Matthews spoke and Petitioner informed Mr. Hill that Mr. Matthews was going to join them. Mr. Matthews ran back to his house, and Petitioner told Mr. Hill that Mr. Matthews had "some heat" and that it would be easier to commit the robbery with a gun. According to Mr. Hill, Petitioner also stated, "We're going to be okay, as long as he [Mr. Matthews] doesn't kill him." Mr. Hill claimed that once Petitioner and Mr. Matthews entered Mr. Johnson's house, he walked away instead of serving as a look-out. Mr. Hill recounted this information in his formal police statement. Mr. Hill also denied seeing Petitioner or Mr. Matthews with a gun before the robbery. Mr. Hill admitted approaching Mr. Johnson's house with Petitioner and Mr. Matthews, but reiterated that he abandoned the robbery when the others entered the house. Mr. Hill denied being present when the shooting occurred and stated that he only learned what had transpired when he spoke to Mr. Matthews the day after the robbery.

As noted, neither Petitioner nor Mr. Hill testified at trial. At the close of trial, defense counsel argued that although Petitioner participated in the robbery, he did not intend for a shooting to occur and thus did not possess the requisite malice to be convicted of first-degree murder. The jury, however, found Petitioner guilty of first-degree felony murder, assault with intent to rob while armed, and felony firearm. The trial court sentenced Petitioner to life imprisonment without parole, 25–50

years imprisonment, and two years imprisonment on those convictions, respectively.

## II. *Procedural History*

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, asserting that the trial court erred in admitting co-defendant Hill's un-redacted out-of-court statement at their joint trial and that insufficient evidence was presented to support his felony firearm conviction. The Court of Appeals affirmed Petitioner's convictions in an unpublished, per curiam opinion. *People v. Bulls*, No. 202149 (Mich.Ct.App. Sept. 25, 1998). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same issues, which was denied in a standard order. *People v. Bulls*, 460 Mich. 863, 598 N.W.2d 341 (1999).

Petitioner, through counsel, filed the present habeas petition on July 27, 1999, raising the following claims as grounds for relief:

I. The trial court violated the Sixth Amendment Confrontation Clause by admitting, over objection, the non-testifying co-defendant's statements as evidence against Mr. Bulls.

A. The trial court committed a patent *Bruton* error by admitting the non-testifying co-defendant's police statements as evidence of Mr. Bulls' guilt.

B. The error cannot be harmless as the co-defendant's statement devastated Mr. Bulls' defense to the felony murder count.

Respondent filed an answer to the petition on December 30, 1999, asserting that the habeas petition should be dismissed for lack of merit. Petitioner filed a reply brief on January 4, 2000. Oral argument was held on February 10, 2000.

## III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

The United States Court of Appeals for the Sixth Circuit recently discussed the deference to be accorded a state court's decision on habeas review in considering whether that decision "involved an unreasonable application of" clearly established federal law:

> The deference to the state courts' judgments required by the AEDPA is achieved by adopting the rule that the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be debatable among reasonable jurists if it is so offensive to existing precedent, so devoid of record support, or so arbitrary as to indicate that it is outside the universe of plausible, credible outcomes.

*Nevers v. Killinger,* 169 F.3d 352, 362 (6th Cir.1999), *cert. denied* — U.S. ——, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999) (internal citations omitted); *see also Tucker v. Prelesnik,* 181 F.3d 747, 753 (6th Cir.1999) (discussing *Nevers* and concluding that "the writ will issue if the unreasonableness of the state court's application of clearly established precedent is not debatable among reasonable jurists. The unreasonableness of the application will not be debatable if it is so offensive to the precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.").

Additionally, § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998), *cert. denied* — U.S. ——, 119 S.Ct. 2403, 144 L.Ed.2d 802 (1999).

## IV. *Analysis*

### A. *Confrontation Clause Violation*

Petitioner claims that he was denied a fair trial because the trial court admitted co-defendant Hill's un-redacted police statements, which implicated Petitioner in the robbery and shooting, into evidence at trial. The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. In *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that admission of a non-testifying co-defendant's confession at a joint trial violates the petitioner's right of confrontation even when the jury is instructed that the co-defendant's confession may not be used to determine the petitioner's guilt or innocence.

The Supreme Court has subsequently held that an accomplice's confession which inculpates a defendant is presumptively unreliable and can be admitted as substantive evidence of the defendant's guilt only if it falls within a firmly rooted hearsay exception or is supported by a showing of particularized guarantees of trustworthi-

ness. *See Lee v. Illinois*, 476 U.S. 530, 543–44, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (citing *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). The "particularized guarantees of trustworthiness" must be inherent in the circumstances of the testimony itself; the fact that other evidence corroborates the testimony in question is insufficient. *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999).

In *Lee*, the trial court admitted two co-defendants' pre-trial statements, implicating themselves and each other, into evidence during their joint murder trial. The statements overlapped to a great extent, but differed as to petitioner Lee's planning of one death, her facilitation of another death, and the factual circumstances relevant to premeditation. The Supreme Court determined that the confessions did not have a sufficient "indicia of reliability" based upon the circumstances in which they were given or their "interlocking" nature to satisfy Confrontation Clause concerns. The Court explained:

> The subjects upon which these two confessions do not 'interlock' cannot in any way be characterized as irrelevant or trivial. The discrepancies between the two go to the very issues in dispute at trial: the roles played by the two defendants in the killing of Odessa, and the question of premeditation in the killing of Aunt Beedie.

> \* \* \*

> We therefore hold on the record before us, there is no occasion to depart from the time-honored teaching that a co-defendant's confession inculpating the accused is inherently unreliable, and that convictions supported by such evidence violate the constitutional right of confrontation.

*Lee*, 476 U.S. at 546, 106 S.Ct. 2056.

Similarly, in *Lilly*, the Supreme Court concluded that an accomplice's statement, which was largely "non-self inculpatory" (*i.e.*, the accomplice minimized his own role and shifted blame to the defendant), was presumptively unreliable and could not be admitted into evidence within a firmly rooted hearsay exception. *Lilly*, 119 S.Ct. at 1901–02.

■ In this case, it is undisputed that the trial court admitted co-defendant Hill's un-redacted statements, which inculpated Petitioner, as evidence against Petitioner at trial, even though Mr. Hill did not testify at trial and was not subject to cross-examination. The trial court admitted Mr. Hill's statements under the penal interest exception to the Michigan hearsay rule, MRE 804(b)(3). The Michigan Court of Appeals, however, determined that Mr. Hill's statements did not fall under the penal interest exception and that his statements lacked "sufficient indicia of reliability to satisfy Confrontation Clause concerns." *People v. Bulls*, No. 202149, \*3 (Sept. 25, 1998).

Petitioner contends that the Michigan Court of Appeals erred by considering this issue as a violation of the hearsay rules rather than a violation of *Bruton* and its progeny. This Court disagrees. Although the Court of Appeals did not engage in an extensive analysis of federal law, the Court's opinion indicates that it decided this issue as a matter of federal constitutional law. The Court of Appeals stated that a non-testifying co-defendant's statement must not violate the defendant's constitutional right to confront his accuser to be admissible against the defendant, cited *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (hearsay statement of a non-testifying witness may be admissible if it falls within a firmly rooted exception to the hearsay rules), and concluded that the admission of Mr. Hill's statements as substantive evidence against Petitioner did not satisfy Confrontation Clause concerns. *People v. Bulls*, No. 202149, \*2–3 (Sept. 25, 1998).

Accordingly, the issue before this Court is whether the Michigan Court of Appeals' decision that admission of Mr. Hill's statements violated the Confrontation Clause constitutes a reasonable application of fed-

eral law. Having reviewed the matter, the Court concludes that the Michigan Court of Appeals' determination in this regard is reasonable. As noted by the Court of Appeals, Mr. Hill's statements were made during custodial interrogation and plea negotiations such that he may have been seeking favorable treatment from the authorities. Furthermore, Mr. Hill downplayed his own role in the robbery and shifted the blame to Petitioner and Mr. Matthews. Under such circumstances, Hill's statements cannot be deemed to have "particularized guarantees of trustworthiness" as discussed in *Lee* and *Lilly, supra.* Petitioner has thus established that the trial court violated his Confrontation Clause rights by admitting co-defendant Hill's un-redacted statements as substantive evidence of Petitioner's guilt.[3]

### B. Harmless Error

■ The remaining, critical issue for this Court to decide is whether or not the trial court's Confrontation Clause error should be deemed harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir.1999) (holding that the harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error); *see also O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict).

In this case, the Michigan Court of Appeals concluded that the trial court's violation of Petitioner's Confrontation Clause rights was harmless error, stating:

Although the trial court erred in admitting Hill's statements against Bulls, we conclude that the error was harmless. An error is not harmless if exclusion of the accomplice's statement would have resulted in a jury finding the prosecution's case significantly less persuasive. *Spinks, supra* at 493, 522 N.W.2d 875. In this case, Bulls' own confessions were as equally detailed an as devastating as Hill's statements. Specifically, Bulls confessed to participating in the robbery with Hill and another accomplice and admitted that he knew that the other accomplice possessed a shotgun. Because malice is a permissible inference from the use of a deadly weapon, *People v. Turner*, 213 Mich.App. 558, 567, 572–73, 540 N.W.2d 728 (1995), a reasonable jury would have reached the same verdict on the basis of Bulls' confession alone.

*People v. Bulls*, No. 202149, *3 (Sept. 25, 1998).

As an initial matter, Petitioner contends that the Michigan Court of Appeals' decision is contrary to federal law because the Court did not apply the harmless error standard set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (to find a non-structural constitutional error harmless, a reviewing court must conclude that the error was harmless beyond a reasonable doubt). Although the Court of Appeals did not cite *Chapman* in its decision, it is clear that the Court applied the appropriate harmless error standard given its reference to *People v. Spinks*, 206 Mich.App. 488, 493, 522 N.W.2d 875 (1994) ("a violation of the Confrontation Clause ... may be harmless if the appellate court can 'confidently conclude, beyond any reasonable doubt, that the error did not affect the jury's verdict.' "). Furthermore, the Court of Appeals' application of the *Chapman* standard is reflected in its finding that "a

---

**3.** At oral argument, Respondent conceded that the admission of Mr. Hill's statements against Mr. Bulls violated the Confrontation Clause. This is consistent with the position of the prosecutor at the preliminary examination. Thus, it is clear that the prosecutor at trial knew or should have known of the dubious constitutional nature of this evidence.

reasonable jury *would* have reached the same verdict on the basis of Bulls' confession alone." *People v. Bulls*, No. 202149, *3 (Sept. 25, 1998) (emphasis added). This Court thus concludes that the Michigan Court of Appeals utilized the appropriate harmless error standard in deciding this case.

Petitioner also contends, however, that the Michigan Court of Appeals' harmless error decision constitutes an unreasonable application of federal law. In support of this claim, Petitioner relies upon the United States Court of Appeals for the Sixth Circuit's recent decision in *Barker v. Yukins*, 199 F.3d 867 (6th Cir.1999). The issue before the Sixth Circuit in *Barker* was whether the Michigan Supreme Court properly determined that the state trial court's failure to specifically instruct a murder defendant's jury that deadly force may be used to repel a sexual assault constituted harmless error.[4] The Michigan Supreme Court found the error harmless, because no reasonable juror would have believed Petitioner's claim of self-defense given that the victim was 81 years old and walked with a cane, the defendant was in her twenties, stood five feet seven inches tall, and weighed 170 pounds, and the victim suffered 10 blows to the head and 32 stab wounds. *Id.* at 870.

On habeas review, the Sixth Circuit concluded that the Michigan Supreme Court's harmless error decision constituted an unreasonable application of federal law under the standard set forth in *Nevers, supra,* 169 F.3d at 371. *Id.* at 872–73, 875. The Sixth Circuit determined that the Michigan Supreme Court improperly invaded the province of the jury by finding that no reasonable juror could have believed that the force used by the petitioner was necessary to prevent the sexual assault by the "enfeebled victim." The Sixth Circuit found that there was sufficient evidence which might have supported a contrary conclusion, including the petitioner's own testimony that she stabbed the victim in

such a frenzy because he persisted in his attack despite her protests and struggle. The Sixth Circuit stated that the Michigan Supreme Court "must have wholly discredited this testimony" in concluding that the amount of force used was unjustified and must have similarly rejected testimony establishing that the victim was a big, strong man when it characterized him as "enfeebled." The Sixth Circuit thus observed:

> Hence, it is apparent to this panel that the Michigan Supreme Court's determination that the erroneous jury instruction was harmless necessarily means that the court believed some evidence but discredited other evidence. This, however, it cannot do and remain in compliance with our constitutional guarantees. *It is neither the proper role for a state supreme court, nor for this Court, to stand in the place of the jury, weighing competing evidence and deciding that some evidence is more believable than others.*

*Id.* at 873 (emphasis added). The Sixth Circuit concluded that habeas relief was warranted because the trial court's failure to specifically instruct the jury that deadly force could be used to prevent a sexual assault had a substantial and injurious influence on the jury's verdict and resulted in actual prejudice to the petitioner by impeding self-defense claim. *Id.* at 875.

■ Given *Barker* and the circumstances of Petitioner's trial, this Court concludes that the Michigan Court of Appeals' determination that the Confrontation Clause error was harmless constitutes an unreasonable application of federal law. Petitioner's sole defense at trial was that he did not intend for Mr. Johnson to be shot and thus did not possess the requisite malice to be convicted of first-degree murder. Under Michigan law, the elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm

---

4. The trial court had only instructed the jury that the defendant could use deadly force if

she honestly believed she was in danger of death or serious bodily injury.

with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute]. *People v. Carines,* 460 Mich. 750, 759, 597 N.W.2d 130 (1999) (citing *People v. Turner,* 213 Mich.App. 558, 566, 540 N.W.2d 728 (1995)); *see also People v. Dumas,* 454 Mich. 390, 396, 563 N.W.2d 31 (1997) (defining malice as the intent to kill, the intent to do great bodily harm, or a wanton or wilful disregard of the likelihood that the natural tendency of one's actions is to cause death or great bodily harm. The facts and circumstances of the killing may give rise to an inference of malice). *Carines,* 460 Mich. at 759, 597 N.W.2d 130. Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm, including evidence that the defendant used a deadly weapon. *Id.* (citing *People v. Turner,* 213 Mich.App. 558, 567, 540 N.W.2d 728 (1995)).

In his own statements to police, Petitioner admitted asking Mr. Matthews if he had a gun and admitted knowing that Mr. Matthews retrieved a shotgun to take to the robbery. Petitioner, however, never indicated any intent to shoot or kill Mr. Johnson. While malice is a permissible inference from the use of a deadly weapon, it is not a mandatory one. Aside from Petitioner's knowledge that Mr. Matthews was armed with a shotgun, the only evidence tending to establish malice on the part of Petitioner were Mr. Hill's statements that Petitioner told him that it would be easier to commit the robbery with a gun and that they would be okay as long as Mr. Matthews didn't kill Mr. Johnson. Had Mr. Hill's statements not been admitted into evidence, a reasonable jury may have found that Petitioner did not possess the necessary malice to support a first-degree felony murder conviction based upon his statements to police and Sergeant Warren's related testimony and the prosecutor's closing argument.

The Michigan Court of Appeals, however, ruled that the admission of Mr. Hill's statements was harmless error, because it determined that the jury would have found malice based upon Petitioner's own statements, which reflected his awareness that Mr. Matthews possessed a shotgun. In so doing, the Court of Appeals transformed the permissible inference of malice from the use of deadly weapon into a mandatory one. The Court of Appeals assumed the role of the jury by discrediting Petitioner's statements that he did not intend for Mr. Johnson to be shot or killed during the course of the robbery and inferring that Petitioner possessed the necessary malice for first-degree murder because he knew that Mr. Matthews was bringing a shotgun to the robbery. Such harmless error analysis invaded the province of the jury and must be rejected by this Court in light of the Sixth Circuit's decision in *Barker, supra.*

Moreover, given that Petitioner's defense at trial centered on his claim that he lacked the necessary malice to be convicted of first-degree murder and given the paucity of evidence establishing such malice, this Court concludes that the trial court's erroneous admission of Mr. Hill's un-redacted statements as evidence of Petitioner's guilt had a substantial and injurious effect or influence in determining the jury's verdict and that Petitioner was prejudiced thereby. Thus, the Court finds that the Michigan Court of Appeals' engaged in an unreasonable application of the harmless error test under 28 U.S.C. § 2254(d). Petitioner is therefore entitled to habeas relief on his Confrontation Clause claim.

## V. Conclusion

For the reasons stated, this Court concludes that Petitioner is entitled to federal habeas relief on his claim that his Confrontation Clause rights were violated at trial and that the resulting error was not harmless beyond a reasonable doubt.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED.** The State must retry Petitioner or release him from custody within 120 days of the date of this order. If the State fails to take such action, this Court shall consider the issuance of an additional writ unconditionally releasing Petitioner from state custody. Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this order is stayed pending the disposition of that appeal.