*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVONTE ALEXANDER MARTIN,

Defendant-Appellant.

UNPUBLISHED
January 28, 2021

No. 350499
Wayne Circuit Court
LC No. 18-009754-02-FC

Before: LETICA, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Following a bench trial, the circuit court convicted Davonte Alexander Martin of carjacking, MCL 750.529a, under an aiding and abetting theory, MCL 767.39. Martin challenges the sufficiency of the evidence supporting his conviction, his attorney's impeachment of the victims, and the scoring of several offense variables that led to his 16-to-25-year sentence. We discern no error and affirm.

## I. BACKGROUND

On January 8, 2013, NW and his girlfriend, TL, travelled from Ann Arbor to Detroit to purchase heroin. Their regular dealer was not available and they parked at a liquor store to find another source. The couple saw three young men exit the store and NW waved them over. These men were Jesse Johnson, Darcell Whittaker, and Whittaker's brother, the current defendant, Davonte Alexander Martin. Whittaker spoke to NW and agreed to introduce them to a heroin dealer. Johnson, Whittaker, and Martin climbed into the backseat of the vehicle and directed TL to drive to a nearby home.

At the home, Whittaker told NW that the dealer was very suspicious and convinced NW to turn over the car keys, his cell phone, and money. Whittaker exited the car and NW followed. NW asked Whittaker what was happening and Whittaker confessed that he was robbing them. NW tried to grab the keys and his phone back from Whittaker. Whittaker responded by punching NW in the face. Martin and Johnson exited the vehicle and joined in beating NW. Martin later claimed that he only joined the fight because he was not aware of the robbery plan and thought NW was attacking his brother. The men continued to beat NW after he fell to the ground.

-1-

As the men beat NW, TL locked herself in the car. At some point, Whittaker returned to the car and tried to break a window with his elbow. When that failed, Whittaker threatened to shoot TL if she did not exit the vehicle. TL opened the door and Whittaker grabbed her purse and laptop, which were resting by her feet. Whittaker ordered TL to enter the house. As Whittaker followed TL into the house, either Johnson or Martin dragged NW over to a tree. That man then punched NW in the face multiple times. NW could not identify which man continued the attack.

Inside the house, Whittaker punched and forcibly raped TL. Whittaker then went back outside but ordered TL to stay in place. Whittaker returned with NW and the man who beat him under the tree. TL later identified that man as Johnson. Whittaker pushed NW to the ground and put his knee on NW's back to hold him down. NW believed Whittaker held a gun to the back of his head. Johnson forcibly raped TL, and Whittaker raped her again. The men ultimately stole the car, a laptop, jewelry, money, and a cell phone from TL and NW.

Martin never entered the home and did not lay hands on TL. Indeed, evidence established that Martin left the scene before Johnson entered the home with Whittaker and NW. However, Martin admitted to punching NW several times. NW's injuries were severe. He required surgery in which a titanium plate was placed in his left cheek, his jaw was stitched back together, and blood was drained from his ear to reduce swelling. NW suffered brain damage, vision problems, and short-term memory loss.

In the initial investigation, officers identified Whittaker and Johnson. In 2016, Johnson pleaded guilty to assault with intent to murder (AWIM), armed robbery, kidnapping, carjacking, torture, and two counts of first-degree criminal sexual conduct (CSC-I). Whittaker eventually pleaded guilty in 2019 to torture, AWIM, armed robbery, kidnapping, and three counts of CSC-I. However, the third suspect was initially misidentified as the person who owned the home where the offenses occurred. That person was jury acquitted.

Martin was not arrested until November 2018. Martin waived a jury trial, and was tried by the bench for torture, AWIM, armed robbery, kidnapping, and carjacking. The court convicted Martin only of carjacking on an aiding and abetting theory. The court sentenced Martin to 16 to 25 years' imprisonment.

## II. SUFFICIENCY OF THE EVIDENCE

Martin now challenges the sufficiency of the evidence supporting his carjacking conviction. He urges that no evidence supported that he intended to commit a carjacking or knew of Whittaker's plans.

We review de novo challenges to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution to determine if a rational fact finder could find the elements of the crime proven beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (quotation marks and citation omitted). We must defer to the trial court's resolution of credibility issues and assessment of the weight of the evidence. *People v Kosik*, 303 Mich App 146, 150; 841 NW2d 906 (2013).

MCL 750.529a proscribes carjacking, in relevant part, as follows:

(1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

(2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

MCL 767.39 provides for convictions on an aiding and abetting theory, subject to the same punishment as a principal. To support a conviction on an aiding and abetting theory, the prosecution must prove that the crime occurred, the defendant "performed the acts or gave encouragement that assisted the commission of the crime," and that the defendant either intended the commission of the crime or knew the principal intended to commit the crime when he gave aid and encouragement. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999).

Martin asserts that he did not know that Whittaker and Johnson planned to carjack or even rob NW and TL. Although Martin admits that he punched NW outside the car, he insists that he was acting in defense of his brother, not assisting a carjacking. However, a defendant's intent cannot be ascertained just by his or her assertions; otherwise every defendant would simply make denials. Rather, "[a]n aider and abettor's knowledge of the principal's intent can be inferred from the facts and circumstances surrounding an event." *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010). Relevant to this analysis are whether there was a "close association between the defendant and the principal, the defendant's participation in planning or executing the crime, and evidence of flight after the crime." *Norris*, 236 Mich App at 421, citing *People v Turner*, 213 Mich App 558, 569; 540 NW2d 728 (1995), overruled in part on other grounds *People v Mass*, 464 Mich 615; 628 NW2d 540 (2001).

Martin has a close association with Whittaker; they are brothers. Martin got into a car occupied by strangers in a liquor store parking lot and listened as Whittaker directed them to an unknown house. He sat back and listened as Whittaker described the drug dealer as suspicious and instructed NW to give him the car keys, his wallet, and cell phone. It can be inferred that Martin was aware of the carjacking plan based on his knowledge of this conversation. Martin was nearby when Whittaker threw the first and only punches against NW. Martin not only punched NW, he continued to beat NW when he fell onto the ground. This was evidence of intent beyond defense. Moreover, Martin fled on foot after joining in the assault, rendering no aid to and seeking no assistance for NW and TL who were quite obviously in a very dangerous situation.

From this evidence, the court could conclude beyond a reasonable doubt that Martin knowingly participated in an assault to further a carjacking. On this record, Martin is not entitled to relief.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

Martin next contends that his trial attorney was ineffective in failing to impeach NW and TL with prior statements about the cause of the fight outside the car. NW and TL gave statements to the police responding to the scene and at the hospital. They made statements to the treating medical providers. They also provided testimony at preliminary examinations and trials related to the charges levied against Whittaker, Johnson, and the wrongly accused NS. Martin contends that the victims did not mention until this trial that NW and Whittaker fought over the car keys outside the car. NW's attempt to regain the car keys is a key piece of evidence, Martin asserts. Without this evidence, Martin contends that the prosecution could not prove that he knew Whittaker planned to carjack the victims or disprove that Martin only entered the fight to defend his brother. Accordingly, Martin urges that his counsel was ineffective for failing to highlight the victims' previous failure to mention this fact.

Martin did not file a motion for a new trial and has not sought remand to do so. In any event, we can adequately review his challenge on the existing record. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). A claim of ineffective assistance of counsel includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish that counsel's performance was deficient, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664.

Decisions concerning the cross-examination and impeachment of witnesses are considered matters of trial strategy. See *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). Counsel is not deemed ineffective simply because he or she fails to use all prior inconsistent statements to impeach the witnesses. See *id*. However, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). Counsel may also be ineffective if he or she fails to adequately investigate the case or prepare for trial, leaving him or her unaware of relevant and material inconsistent statements. See *People v Trakhtenberg*, 493 Mich 38, 53; 826 NW2d 136 (2012), quoting *Strickland*, 466 US at 690-691 ("Initially, a court must determine whether the 'strategic choices [were] made after less than complete investigation,' and any choice is 'reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation.' ").

Martin attempted to expand the record on appeal by attaching to his appellate brief various documents including police reports and a warrant request. As Martin did not seek this Court's approval to expand the record, we may not consider those documents. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008). We note, however, that these records do not reveal prior

statements that would have altered the outcome of Martin's trial. Although TL and NW initially lied about the reason for their visit to Detroit and NW was confused about events in the aftermath of his beating and traumatic brain injuries, the victims always asserted that the perpetrators took their keys and ordered NW out of the car just before the attack. Martin was in the car with Whittaker and the victims when these events transpired. The victims' statements in these documents support that the fight was in furtherance of stealing the victims' vehicle, and that Martin would be aware of that fact.

In any event, defense counsel did extensively cross-examine TL and NW about their prior statements. Counsel elicited testimony from NW that he did not remember speaking to the police at the scene. NW only remembered testifying once before, not twice. Counsel emphasized several inconsistencies between NW's prior testimony and police statements and his testimony on direct in this case. He also brought out multiple inconsistencies between TL's testimony on direct and her prior testimony at Johnson's and NS's trials and during prior hearings. Defense counsel highlighted that both NW and TL previously identified NS as the third offender in this incident, and still could not identify Martin. Counsel elicited testimony from TL that she and NW initially coordinated their story and lied about their purpose in visiting Detroit to hide their drug activity. Given the extent of the cross-examination, we cannot find counsel ineffective for failing to zero in on the specific piece of information identified by Martin on appeal.

On cross-examination of the officer in charge of the investigation, defense counsel attempted to introduce into evidence a police report that purportedly included prior inconsistent statements made by TL and NW. During recross, counsel attempted to present the actual report into evidence. The court excluded the report on hearsay grounds. Martin characterizes this belated attempt to introduce a police report into evidence as "an effort to make up for" his prior "deficiency" in questioning the victims. Counsel was not deficient, however, and his action in questioning the officer does not alter our conclusion.

## IV. OFFENSE VARIABLES

Finally, Martin challenges the scoring of several offense variables (OVs) that impacted his sentence. "We review for clear error the trial court's factual determinations used for sentencing under the sentencing guidelines, facts that must be supported by a preponderance of the evidence." *People v Dickinson*, 321 Mich App 1, 20-21; 909 NW2d 24 (2017). "We will hold the trial court's factual determinations clearly erroneous only if we are left with a definite and firm conviction that the trial court made a mistake." *Id*. at 21. "We review de novo the trial court's interpretation and application of the statutory sentencing guidelines." *Id*.

"Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). The sentencing offense is the "crime of which the defendant has been convicted and for which he or she is being sentenced." *Id*. at 122 n 3. The Michigan Supreme Court has established that a sentencing court may not rely, even in part, on acquitted conduct when imposing a sentence for the defendant's conviction. *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019).

This principle was recently reaffirmed in *People v Roberts*, ___ Mich ___ (2020) (Docket No. 161263). In that case, the Michigan Supreme Court reversed this Court's holding that *Beck* does not preclude a sentencing court from "considering the entire *res gestae* of an acquitted offense" because a sentencing court may "generally consider the time, place, and manner in which an offense in committed" so long as that conduct is not actually attributed to the defendant. *People v Roberts (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 339424); slip op at 5-6. In *Roberts*, this Court erroneously concluded that the sentencing court did not err by considering the context of the sentencing offense—felon-in-possession—to conclude that the defendant intrinsically placed people in grave danger by bringing a gun to a crowded bar and thereby assessing 25 points for OV 9, despite that the defendant was acquitted of assault with intent to murder. *Id*. The Supreme Court reversed:

> As argued by both the prosecution and defense at trial, the factual issue facing the jury in determining the defendant's guilt or innocence of the assault with intent to murder charge was whether he passed a gun to another individual, who it is undisputed then fired the gun into a crowd on a city street. The jury acquitted the defendant of this charge. [*Roberts*, ___ Mich at ___.]

As such, the court could not use this conduct to score OV 9 for the felon-in-possession conviction.

Martin contends that the court erred in assessing five points each for OVs 1 and 2. OV 1 considers the aggravated use of a weapon. MCL 777.31(1). Five points are appropriately assessed for OV 1 if "[a] weapon was displayed or implied." MCL 777.31(1)(c). OV 2 considers the possession and use of a lethal weapon. MCL 777.32(1). Five points are to be assessed when "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." MCL 777.32(1)(d).

Martin's scores were not founded on acquitted conduct and were supported by record evidence. Although Martin was acquitted of armed robbery, evidence supports that a weapon was also used in furtherance of the carjacking. Specifically, TL testified that Whittaker threatened to shoot her to get her to leave the car. The court found that this threat was made "to presumably follow through on the carjacking," which Martin assisted in.

Moreover, both OVs 1 and 2 provide that in multiple offender situations, all offenders must be assessed the same number of points. MCL 777.31(2)(b); MCL 777.32(2). Martin was sentenced for aiding and abetting a carjacking, a carjacking for which Johnson was also convicted.[1] The prosecution asserted, and Martin never disputed, that a court assessed five points for OVs 1 and 2 in sentencing Johnson. Martin's assessment was not only proper, it was required.

Martin next challenges the assessment of 50 points for OV 7. Fifty points is scored for OV 7 when "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "OV 7 is designed to respond to particularly heinous instances in

---

[1] Whittaker pleaded guilty to armed robbery but not carjacking. His scores for these OVs are therefore irrelevant.

which the criminal acted to increase a victim's fear by a substantial or considerable amount." *People v Rodriguez*, 327 Mich App 573, 578; 935 NW2d 51 (2019) (quotation marks and citations omitted).

The court acquitted Martin of torture. But the court found 50 points appropriate in connection with the carjacking conviction for excessive brutality. "For purposes of OV 7, excessive brutality means savagery or cruelty beyond even the usual brutality of a crime." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (quotation marks and citation omitted). The court acknowledged that Martin claimed to be following his upbringing "to jump in and help family members when they're in fights." "But," the court continued, "there was also quite clear testimony that there were three people beating up [NW]. This wasn't by any stretch an issue of self-defense." Indeed, the record supports that Martin, Whittaker, and Johnson continued to beat NW as he lay on the ground covering his head for protection. And the beating was far above and beyond the necessary force to complete a carjacking. Accordingly, the court appropriately scored OV 7.

The court also assessed 15 points for OV 8, reflecting that "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). "A victim is asported to a place or situation involving greater danger when the victim is moved away from the presence or observance of others." *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014). Here, Whittaker lured the victims to a private residence where the men could carjack the victims without interruption. Martin, Whittaker, and Johnson could have simply carjacked NW and TL at the liquor store. Out in the open of the public parking lot, the three perpetrators would not have been free to beat NW and sexually assault TL. Accordingly, the 15-point score was warranted. As the court appropriately scored Martin's sentencing guidelines, he is not entitled to resentencing.

We affirm.

/s/ Anica Letica
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien